(49 Misc. Rep. 535)

### BRISTOL HOTEL CO. v. PEGRAM.

(Supreme Court, Appellate Term.  February 27, 1906.)

**1. EVIDENCE—PAROL—VARYING WRITTEN CONTRACT.**

In an action for rent, evidence that prior to the execution of the lease the landlord represented that the building in which the apartments to be rented were located was to be used only for apartments to be leased for a month or longer to tenants with approved references was inadmis-

sible where the lease was silent in respect to such exclusive use of the building.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1736–1745.]

**2. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.**
    In a lease of apartments in a building the words "known as the Bristol Apartment Hotel," following the word "building," were merely descriptive of the character of the hotel, and not indicative of an agreement that no portion of the building should be devoted to purposes inconsistent with the use of a building as an apartment hotel.

**3. SAME—EVICTION OF TENANT.**
    The use of a building as a hotel for transients was not sufficient to constitute an eviction of tenants to whom apartments were leased for the term of a year.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the Bristol Hotel Company against Walter M. Pegram. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before SCOTT, P. J., and GIEGERICH and GREENBAUM, JJ.

Weil, Wolf & Kramer, for appellant.

Henry Pegram, for respondent.

GREENBAUM, J. This action was brought by the plaintiff to recover, under a written lease for one year, the sum of $240, the unpaid rent for the last four months of the term. The plaintiff leased to the defendant a suite of rooms in the building described in the lease as the "Bristol Apartment Hotel," and defendant entered into the occupancy of the rooms, and paid rent for eight months. The defendant moved out upon the expiration of the eighth month, and set up as defense to this action "a general denial and breach of contract." As the pleadings were oral, and as the parties evidently tried the case also upon the theory of the defense of "eviction," it may be assumed that that defense also was interposed.

The defendant, under plaintiff's objection that the testimony tended to contradict the written lease, was permitted to give proof of the fact that before he executed the lease he was told by the plaintiff's then manager that the occupancy of the building would be exclusively devoted to apartments leased for the month or longer to tenants with approved references, and that it was in reliance upon this guaranty that defendant signed the lease. Defendant was further permitted to show that shortly before he moved from the premises he learned that rooms in the building were rented to transient guests for the day, as is usual in hotels, and that a considerable portion of the hotel was thus occupied. It was not only not claimed that the transient guests were objectionable or improper, but it was expressly disclaimed that any such objection was entertained by defendant, who frankly avowed that he moved without ever having objected to the use of the hotel building for transient guests, and without assigning any reason for his moving out.

The testimony relating to the representations alleged to have been made before the hiring, that apartments only were to be leased in the

building, was admitted, not as tending to vary the terms of the lease, but in explanation of the meaning of the phrase "apartment hotel." It is not apparent how the so-called "explanation" would affect the rights of the parties under the lease. Assuming that an "apartment hotel" was one where all the rooms were rented in apartments under leases for a term of one month or upwards, it by no means follows, in the absence of an express covenant that no portion of the building would be rented otherwise than in apartments, as aforesaid, that plaintiff was guilty of a breach of any contract with defendant when it undertook to lease rooms in the building to transient tenants. If the testimony to which objection was taken was designed only to explain the phrase "apartment hotel," it merely had the effect of showing what would seem to me in this case a wholly unnecessary fact, unless a description amounted to a contract that no portion of the building might be leased otherwise than in apartments. So far as the testimony may tend to show that the parties contemplated a restriction of occupancy to leased apartments for a term of a month or more, it would have the effect of varying the terms of the written lease, which is silent in respect to any such exclusive use of the building, and would be inadmissible. Van Derhoef v. Hartmann, 63 App. Div. 419, 71 N. Y. Supp. 552.

It seems to me that the words "known as the Bristol Apartment Hotel" after the word "building" were merely descriptive of the character of the hotel at the time of the making of the lease, and are not indicative of an agreement that no portion of the building may be devoted to purposes not inconsistent with the use of a building described as an apartment hotel. If the tenancy were conditional upon the exclusive use of the building to leased apartments, then, under the familiar rules of construction applicable to restrictive covenants, the intention so as to restrict should not be one of inference, but unmistakably expressed in the contract of leasing. Indeed, respondent in his brief evidently lays little stress upon the defense that there was a breach of contract, his arguments being mainly based on the defense of an eviction. He rests this defense upon an implied covenant of quiet enjoyment, an incident to every lease, and attempts to justify his abandonment of the premises because the act of the landlord in affording accommodation to transient guests rendered the premises unsuitable to the purposes to which they were applied at the time of the letting. There is not, however, the slightest proof in the case that the renting of rooms to transients in any degree interfered with defendant's beneficial enjoyment of the rooms rented to him. The only testimony in that regard was the following:

"And the fact that there were transients there—Well, it was the whole point with us; it wasn't anything else; * * * meeting strangers, and having the house continually upset. We went there to be in a private house, and not in a hotel at all. We didn't want to live in a hotel."

The undisputed facts are that the hotel building contained 86 apartments; that about 25 per cent. of the building was rented in apartments to parties under leases ranging from one to two years; that the agreement of leasing provided that the landlord furnish, "without extra

charge, hall and chamber service, ice water, water for all the plumbing fixtures, steam heat to warm the halls and apartments during the cold · season," and the descriptive book which the defendant testified was shown him by the plaintiff's agent before the hiring, and which he offered in evidence, refers to a restaurant on the first floor, with service a la carte and table d'hote.   The building was therefore at the outset equipped with hotel accommodations.   It does not appear that the restaurant service was open to the general public.   But suppose the management entertained guests in the restaurant other than those living in the apartments, would this constitute a breach of the implied covenant of quiet enjoyment?   The defendant has the undoubted right to a preference to living in a house exclusively devoted to apartments, and the propriety of such a preference is manifest; but it seems to me, if he intended to have his tenancy conditional upon such an exclusive occupancy of the building, he should not have executed the lease unless it contained a clause safeguarding his rights in that respect, and clearly expressing the agreement in that behalf between the parties.

In the absence of such an agreement and of any proof tending to show that defendant's enjoyment of the premises were in any manner interfered with by the landlord, excepting, perhaps, that a proper fastidiousness of the defendant was thereby affected, it cannot successfully be urged that the facts established constitute, within the contemplation of the parties, a constructive eviction, which justified the tenant in abandoning the premises, and defeating a recovery for rent for the unexpired term.

It is not pleaded nor alleged that the defendant was induced to make the lease through fraud, and it seems to me that no defense valid in law was established that the rulings of the court were erroneous, and the verdict of the jury in defendant's favor unfounded.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.   All concur.