57TH STREET LUCE CORPORATION, Plaintiff, *v.* GENERAL MOTORS CORPORATION, Defendant.

Supreme Court, Special Term, New York County, February 2, 1944.

*Herbert G. McLear* for plaintiff.

*Anthony J. Russo* and *John Thomas Smith* for defendant.

EDER, J. Action for a declaratory judgment. Counterclaim to recover moneys expended for repairs.

The controversy stems from a dispute of the parties regarding the construction of certain of the provisions of the lease of an entire ten-story building. In December, 1940, plaintiff, as lessor, entered into a lease with the General Motors Sales Corporation, as lessee, under date of November 27, 1940, for a term commencing January 1, 1941, and expiring December 31, 1945; this lease was assigned to the defendant General Motors Corporation. The lease provides that the demised premises are " to be used for an automobile showroom, and/or service station, and/or warehouse, and/or garage, and/or for general automobile, tractor, implement, airplane and/or truck business and/or accessories thereto, and/or any line of business allied to or connected with any of the above, or any type of business conducted or controlled by General Motors Corporation, for which said premises may be now or hereafter at the time of such occupancy lawfully occupied.''

In September, 1943, the defendant sublet the tenth floor to be occupied only for manufacturing and printing of folding paper cartons and necessary office purposes. The defendant says that this sublease was made only after, and due to, the seriously curtailing impact of governmental wartime regulations on its business and that there was a considerable contraction in the business uses for which it hired the entire building and had occupied it for five years prior thereto.

The question basically involved is whether, under the above-quoted provision of the lease pertaining to the defendant's uses of the entire building, the defendant was permitted to sublet for the purposes mentioned.

The plaintiff contends that this provision constitutes a limitation of the purposes for which the building might be used and that the lease may be terminated for a violation thereof; a declaration is sought that such a violation has occurred and that the lease has terminated by the plaintiff's election, and appropriate accompanying relief is sought.

The defendant maintains that the subletting mentioned does not involve a violation; that this provision is merely descriptive of the uses to which it was contemplated the defendant would put the building, and, hence, plaintiff has no cause of action. This, I think, is so.

It is generally held that a term which is merely descriptive of the character of the premises is not a restriction upon the use thereof, and within that rule I am of the opinion that, in the case at bar, the said provision is not restricted to only the defendant's use of the premises as there expressed, but, being descriptive, it could use the same for any other lawful purpose. As said in *Bovin* v. *Galitzka* (250 N. Y. 228, 231): "The plaintiff had the absolute right, by appropriate provisions in the lease, to specify that the leased premises could be used for a particular purpose only. * * * In the absence, however, of restrictions contained in a lease, a tenant may occupy and use the premises leased in any lawful way which he desires, not materially different from that in which they are usually employed, to which they are adapted and for which they were constructed."

In that case the premises leased consisted of a corner store and part of a cellar to be used and occupied as a real estate office, and it was claimed that this constituted a restrictive covenant which prevented the lessee from using said store and cellar for any purpose other than a real estate office; the premises were sublet and were being used for a grocery and dairy store. It was held that, there being no express limitation that the demised premises could be used for a particular purpose only, the claim of plaintiff to the converse was untenable; the court also took occasion to remark that, considering (as here) the premises could be sublet, and considering, also, the nature of the premises, they were also factors indicating that said provision was not intended by the parties to constitute a restriction upon the use of the premises by the lessee or his sub-lessees.

In *Lyon* v. *Bethlehem Engineering Corp.* (253 N. Y. 111, 113) the court, following the *Bovin* case (*supra*), said: "A tenant, in the absence of restrictions contained in a lease, may use a leased building in any lawful way not materially different from that to which it is adapted, and for which it was constructed. The right to exclusive occupation granted by a lease entitles a tenant to use the premises in the same manner that the owner might have used them. He must not, however, do anything to the injury of the inheritance or which constitutes waste. * * * The landlord may, however, by express provisions in a lease, limit and restrict the use of a building to specific purposes. He has a legal right to control the uses to which his building may be put and may do so by appropriate provisions in a lease. A landlord who seeks to limit a tenant's right to the exclusive use and occupation of a building must be able to point to some particular term of the lease which expressly restricts the tenant's rights."

In *Bristol Hotel Co.* v. *Pegram* (49 Misc. 535) it was held that in a lease of apartments in a building, the words "known as the Bristol Apartment Hotel", following the word "building", were merly descriptive of the character of the hotel at the time of the making of the lease and did not indicate an agreement that no portion of the building should be devoted to purposes inconsistent with the use of a building as an apartment hotel. The court, per GREENBAUM, J., said, at page 537: "If the tenancy were conditional upon the exclusive use of the building to leased apartments, then, under the familiar rules of construction applicable to restrictive covenants, the intention so to. restrict should not be one of inference, but unmistakably expressed in the contract of leasing." In other jurisdictions a like construction obtains.

In *Barnett* v. *Clark* (225 Mass. 185) the defendant leased from plaintiff premises to be used for garage purposes. It was held that this was merely descriptive and did not restrict the right of the lessee to use the premises for any lawful purpose and that there was no implied warranty that the premises when leased were, or that they would continue to be, usable for the purposes of a garage only.

In *Security Trust and Savings Bank* v. *Claussen* (44 Cal. App. 735, 737) it was held that under a lease providing that the premises were to be used for the purpose of carrying on the business pertaining to a general retail liquor establishment, "such provision as to use is permissive rather than restrictive." The court further held: "Defendant was not limited in the

use thereof to conducting a liquor business, but might carry on any lawful business therein * * *."

The building here in concern is a business structure and there is no claim or proof that its value has in any manner been impaired by the nature of the business of the sublessee, or in any way damaged, or that there is any likelihood thereof, and, as said in the *Lyon* case (253 N. Y. 111, 113, *supra*), in the absence of restrictions contained in a lease a tenant may utilize the demised premises in any lawful manner not materially different from that to which it is adapted and for which it was constructed.

When it is sought to dissolve an estate, by technical construction, the court should proceed with requisite caution and hesitation; the law favors the continuance of a grant, rather than its extinction.

Within the rule set forth in the cited cases the provision here in controversy is neither a restrictive covenant nor a conditional limitation, and declaration is made that the act of the defendant, in subletting the premises, as mentioned, was not a breach or violation of said provision.

Judgment is accordingly directed for the defendant. Exception to plaintiff.

With respect to the counterclaim, it was the understanding of the court that counsel were in accord that the repairs were made by the defendant pursuant to a letter which both parties construed and regarded as a directive of the Petroleum Coordinator for War; the court has since been informed that such is not the fact. In view of this, and there being no proof that such a directive was issued, the court, in the exercise of discretion, declines to entertain jurisdiction to render a declaratory judgment with respect to the counterclaim and it is dismissed, without prejudice, and defendant is relegated to an action at law with respect thereto.

Submit findings and decree on notice.