EPPENAUER et al. v. SCHRUP.

No. 13809.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 14, 1938.

Rehearing Denied Nov. 18, 1938.

474

Bryan, Stone, Wade & Agerton, of Fort Worth, and Baker & Baker and J. B. Dibrell Jr., all of Coleman, for appellants.

Ernest May and M. L. Swartzberg, both of Fort Worth, for appellee.

SPEER, Justice.

This appeal involves venue under Rev. Civ.St. Art. 1995, and exceptions 4 and 7 thereunder, Vernon's Ann.Civ.St. art. 1995, subds. 4, 7.

On September 1st, 1937, George J. Schrup, as plaintiff, filed in a district court of Tarrant County, Texas, a second amended petition to his original petition filed on June 6th, 1937, in which he sued A. R. Eppenauer, Robert F. Imbt, both alleged to reside in Tarrant County; Cliff Groves, of Coleman County; and Adam Grafe, of Dallas County, for recovery of certain funds alleged to have been received by them as a result of a fraud committed jointly by them in Tarrant County, during the year 1936; that the funds alleged to be in the possession of the defendants are those of plaintiff's, growing out of a contract between plaintiff and Groves, by the terms of which Groves was to use certain oil well drilling equipment in the drilling of oil wells, and that out of the profits arising therefrom, plaintiff was to receive the agreed value of his equipment and funds advanced by him in connection therewith and thereafter to receive one-half of such profits, and Groves the remaining one-half. That plaintiff's said investment amounted to $12,500, and that no part of it had been repaid.

It was alleged that prior to August 25th, 1936, Groves and others had contracted with Eppenauer to drill a well on lands in Young County, and Groves was to receive an undivided interest in the oil leases for the drilling, and that on the date last mentioned, a new contract was made between Eppenauer and Groves, by which the former was to, and did, take charge of plaintiff's drilling equipment and finished the well. It is charged that by said new contract, Groves was to receive an undivided ¾ths interest in the leases, or was to receive an assignment from Eppenauer of three of the four leases; that under some secret agreement between Eppenauer and Groves, the former has not assigned said leases to the latter, but by a connivance between Eppenauer and Groves to defraud plaintiff out of his rights in and to said leases, Eppenauer is endeavoring to sell said leases and has in fact sold an interest therein to Grafe, for $6,000 in cash and a deferred payment of the same amount to be paid if, as and when oil is produced therefrom. That said sale was made by Eppenauer and the proceeds thereof were received by him with knowledge that the property so sold belonged to plaintiff; that Eppenauer had retained of the $6,000 so received by him, $2,554.40, delivered to Imbt $246.60, and paid to Groves the remaining $3,199; that the distribution by Eppenauer of said funds took place in Tarrant County, with knowledge of plaintiff's rights therein, and that he fraudulently concealed said transaction from the auditor appointed by the trial court to inspect his books and accounts pertaining to plaintiff's rights under his contract with Groves.

The prayer was for process and final order that the receiver theretofore appointed take charge of the three tracts of land in which plaintiff claimed an interest, and that he be further empowered to take into his custody the funds received by the re-

spective defendants from the attempted sale, and that the defendants be ordered by the court to deliver said funds to the receiver, to be held subject to the further orders of the court. Further, that Groves make an accounting of all profits received by him under his contract with plaintiff, and that Eppenauer and Imbt be required to account for all of such profits held by them.

Both Eppenauer and Groves filed pleas of privilege, the former claiming his residence to be in Jeff Davis County, and Groves claiming Coleman County as his residence. Plaintiff timely controverted the pleas of privilege, claiming specifically that venue lay in Tarrant County, because: (a) Eppenauer lived in Tarrant County at the time of the institution of the suit; (b) A joint cause of action was pleaded against defendants Imbt, Eppenauer and Groves, and that even if Eppenauer did not reside in Tarrant County, the defendant, Imbt, is and was a resident of that county; and (c) This being an action for fraud committed by the named defendants in Tarrant County, venue was fixed in the county where the suit was filed. The second amended petition was made a part of the controverting pleas, and additional allegations were made in the answer, to the effect that Eppenauer connived with Groves in Tarrant County to defraud plaintiff out of his property, by frequently promising plaintiff to see that his interest in said leases should be protected when settlement was made between Eppenauer and Groves, and that he fraudulently failed and refused to keep said promises. This controverting answer brings into consideration exceptions 4 and 7 of R.C.S. Art. 1995.

The issues of venue came on for trial to the court, and after the evidence was all in, both pleas of privilege were overruled. We believe the court was correct in so holding.

■ Exception No. 4, under our general venue statute, article 1995, insofar as applicable here, reads: "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides."

In construing the above exception, our courts have held that if the non-resident defendant files his plea of privilege to be sued in the county of his residence, the plaintiff may sustain venue by alleging a joint cause of action against the resident and non-resident defendants, and by making proof of his action against the resident defendant, or by proving such an action against the resident defendant so intimately connected with the cause of action alleged against the non-resident defendant that the two may be joined under the rule intended to avoid multiplicity of suits. That when these allegations are made and proof entered that the one defendant resided in the county in which venue is sought to be held, and that plaintiff has a cause of action against him, as alleged, it is unnecessary to make the additional proof that he likewise has a cause of action against the non-resident defendant. Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300.

■ By plaintiff's petition, he alleged that he was entitled to the $6,000 obtained by Eppenauer from Grafe, and divided by Eppenauer between himself, Groves and Imbt. He prayed that each of those parties be required to deliver the amount they received out of that fund to the receiver. Plaintiff did not know upon what theory it was divided between them, nor the nature of the claim each laid to the portion received. He claimed it was the proceeds of leases earned by Groves under his contract with plaintiff, by which plaintiff should receive such profits until reimbursed for his machinery. The evidence indisputably shows that Imbt was and is a resident of Tarrant County. Plaintiff offered testimony sufficient to prove his contract with Groves, by which plaintiff was to receive the profits derived from the use of the machinery until he was fully paid. The contract between Groves and Eppenauer was in evidence by which Groves and the Dyers were to get from Eppenauer four leases covering 80 acres of land each, in consideration of the surrender and cancellation of a former contract and to permit Eppenauer to use the drilling equipment in completing the well. Eppenauer testified he never did assign the leases to Groves. He also testified that he assigned certain of those leases mentioned in the contract to the Dyers, who were parties to the contract, and that he assigned three 40-acre leases out of those tracts to Adam Grafe, and received $6,000 in cash and further pledges of oil runs.

Plaintiff alleged Imbt got a part of the money under some kind of a claim in the leases, the exact nature of which he did not

know. That the money so received was the proceeds of the sales of leases in which plaintiff was interested to the extent of receiving the profits of the drilling contracts made by Groves until he was repaid the amount of his investment; allegations were made and proven that Eppenauer sold the acreage and received the proceeds, and the latter was divided in the proportions shown between these three defendants. Plaintiff was seeking to have the receiver take charge of the fund until the court could determine its proper disposition. He sought to have the court command each of these defendants to deliver to the receiver all of said funds in their respective hands. Insofar as this record is concerned, we can see no reason why Imbt is not a proper party to plaintiff's action.

It is unimportant in this proceeding whether the amount for which Imbt is liable is less than the minimum jurisdiction of the district court. Turner v. Brooks, 2 Tex.Civ.App. 451, 21 S.W. 404. Nor does the question of whether or not Imbt is a proper party under plaintiff's allegations of a fraudulent conspiracy between Eppenauer and Groves control Imbt's interest in a disposition of plaintiff's suit. Childress v. Brooks, Tex.Civ. App., 265 S.W. 224, writ dismissed. It was held in Alexander v. Alexander, Tex. Civ.App., 265 S.W. 1072, writ dismissed, that "Every person having a direct and ascertainable interest in the subject-matter of litigation, which may be affected by the court's action in the suit, is a proper party." [page 1073.] The foregoing statement of the rule is obvious. Can it be said that if plaintiff should succeed in having the court to order the receiver to demand and receive from these parties the funds to which he lays claim, that the interest of Imbt is not involved? If he was not a party before the court and such an order should be entered, and it was necessary to demand of him such funds, he would not be bound by the order. It cannot be said that before venue can be sustained as against the non-resident defendants, that Imbt must be a necessary or indispensable party, but it is essential only that he be a proper party. Storrs-Schaefer Co. v. Shelton, Tex.Civ.App., 82 S.W.2d 156. We think and so hold that venue was established under exception 4 by the allegations and evidence relating to the defendant, Imbt.

We also think the record before us is sufficient to establish the venue fact that Eppenauer was suable in Tarrant County, irrespective of what we have said about Imbt, and his residence and relation to the suit. Not because of the alleged fraudulent transactions, for, as we shall presently show, we deem it unnecessary and inexpedient to discuss that phase of the case. All we have said about Imbt and his relation to plaintiff's cause of action, applies with equal force to Eppenauer. A joint cause of action was plead against all the defendants, and if Eppenauer was a resident of Tarrant County, and suable there when the plaintiff's action was begun, and a case was proven against him, the court acquired venue and jurisdiction of all parties, including Groves.

Relating to Eppenauer's residence, he testified, in substance, that since 1935 he had been living with his family in a rented furnished house on Tulsa Way, in Fort Worth, Tarrant County, Texas. A telephone was installed and remained until disconnected, about June 15th, 1937. During April and May of that year, he had acquired some ranch lands in Jeff Davis County, with a view to moving his family from Fort Worth onto the ranch and making his home there; he spent most of the month of May preparing the ranch for a home, and moving his household goods from places where they had been stored to the ranch house; improvements of the ranch property were still under way when the trial was had in November, but that during the latter part of May the premises were usable as a place of residence, and Eppenauer and his wife did occupy the house a part of the time; the wife divided her time during the month of May between living at the ranch in Jeff Davis County, and the Fort Worth house, where the children were. On May 4th, 1937, Eppenauer executed and caused to be filed a formal designation of two hundred acres of the ranch lands as his homestead. He testified the children were in school in Fort Worth, and he did not wish to remove them before expiration of school on about June 15th; that he spent the first half of June, from the 1st to the 15th, in Fort Worth with his family, and, as he put it, "I stayed at my house on Tulsa Way." When school was out, on June 15th, 1937, Eppenauer moved his family to the ranch property, gave possession of the rented premises in Fort Worth, and ordered the telephone disconnected.

■ It is a well settled rule of law in this state that a person may have more than one place of residence or domicile for venue purposes. Wrenn v. Brooks, Tex.Civ.App., 257 S.W. 299; Pittsburg Water Heater Co. v. Sullivan, 115 Tex. 417, 282 S.W. 576; Bolton v. Alley, Tex. Civ.App., 25 S.W.2d 638; Gilmer v. Graham, Tex.Civ.App., 26 S.W.2d 687; Mercer v. Gray, Tex.Civ.App., 109 S.W.2d 1107.

■ "Civil suits in the district and county courts shall be commenced by petition filed in the office of the clerk." R. C.S. Art. 1971. A construction of the foregoing statutory provision has been held to mean that the filing of a petition with the clerk of the proper court is the commencement of the suit. Wood v. Gulf, C. & S. F. Ry. Co., 15 Tex.Civ.App. 322, 40 S.W. 24; Tribby v. Wokee, 74 Tex. 142, 11 S.W. 1089; State Nat. Bank of San Antonio v. Lancaster, Tex.Civ.App., 229 S.W. 883, writ refused.

At the date of the institution of this suit, on June 6th, 1937, it was not certainly ascertainable in which county Eppenauer in fact resided, whether in Jeff Davis or Tarrant County. He was evidently maintaining two domiciles or residences, yet there can be no question about which of the two he intended to eventually make permanent. It remains that when the suit was instituted, he was in fact at the Tarrant County residence, with his family, where he remained the first half of June. He had spent a greater portion of the month of May at the ranch property, his wife dividing the time about equally between the two places; he was in Jeff Davis and the children in Tarrant County, where, by his permission and option, they remained in the rented home until June 15th, 1937.

■ The question of venue and jurisdiction of Eppenauer's person when this suit was instituted, we believe, is controlled by the rule announced in the early case of Brown v. Boulden, 18 Tex. 431, 432. There Boulden was in the act of changing his place of residence from the county in which he was sued to another; he, like Eppenauer, had gone to the county of his future home and with certain of his slaves had prepared a place to which he intended to move his family. He, like Eppenauer, had left his family in the county in which he was sued; he was in the new county, busy with his preparations for the home. The court there

said: "If a defendant has a known residence, he must be sued in the county of his residence. But if he is in the act of removing from one county to another, and his affairs are in such a state, that it can not be certainly known in which county his residence in fact is, we think it may be held, consistently with the legislative intention, that the suit may be brought in either county. At all events, where, as in this case, he has had his residence in one county for a considerable time anterior to the bringing of the suit, that, for the purposes of the suit, ought to be held to be the place of his residence, until he has effected an actual and complete change of residence from that to another county; not only by going to prepare a home for his family in the latter county, but by actually removing his family and principal effects from his former to his new home." The case from which we have quoted is the recognized rule in this state; that opinion has been followed by the Supreme Court with approval in the following cases: Wilson v. Bridgeman, 24 Tex. 615; Crawford v. Carothers, 66 Tex. 199, 18 S.W. 500; Pearson v. West, 97 Tex. 238, 77 S.W. 944; Taylor v. Wilson, 99 Tex. 651, 93 S.W. 109; Pittsburg Water Heater Co. v. Sullivan, 115 Tex. 417, 282 S.W. 576, and many decisions by the Courts of Civil Appeals.

■ Eppenauer and Groves, the appellants here, contend that the ruling of the court in the case of Faires v. Young, 69 Tex. 482, 6 S.W. 800, fits the facts of the case at bar, and supports their contention that Eppenauer was not a resident of Tarrant County. In that case the court quotes with approval from the opinion in Brown v. Boulden, Case, supra, but distinguishes the facts in the two cases. There, the defendant had sold his old home, and had gone to another county and prepared the new place of residence and moved all his effects to the new home and when ready to remove his family, was prevented from doing so by sickness; he had sold his old home and had given up possession before suit was filed; among other things, the court said, in comparing the facts in the two cases [page 801]: "The family were kept in their former home in that case [Brown-Boulden] by the voluntary act of the defendant, while here he was prevented from moving them by sickness. We think the cases different in other particulars, which need not be dwelt on." A reading of that case will disclose other distinguishing features than those mention-

**478**

ed, and also distinguish the facts from those in the instant case. Here, Eppenauer, perhaps, had done all he could do in Jeff Davis County to prepare the new home for occupancy; he had done nothing in Tarrant County except prepare his family to move to the ranch. He came back to his Tarrant County rented home about the 1st of June, 1937, and voluntarily remained there with his family, awaiting the close of school, on about the 15th of June, deeming it inexpedient to complete his removal and change of residence until that time. In the meantime, on June 6th, 1937, this suit was instituted. We think he was at that time a resident of Tarrant County, or, to say the least of it, he was maintaining two places of residence, in which event he was suable in the county of either.

If we are correct in our conclusions thus stated, regarding the residence and interest in this suit of either Imbt or Eppenauer, venue as to all was established in Tarrant County, and it becomes unnecessary to discuss the third ground urged for venue, that of a fraud having been practiced by defendants upon plaintiff in Tarrant County, which involves exception 7 of Art. 1995, R.C.S. See Lakeside Irrigation Co. v. Markham Irrigation Co., 116 Tex. 65, 285 S.W. 593; De Shong Motor Freight Lines v. North Texas Coach Co., Tex.Civ. App., 108 S.W.2d 766.

It is the rule of law in this state that when venue is sought to be acquired under exception 7 of R.C.S., Art. 1995, practically all facts and circumstances must be proven necessary to recover in such action upon its merits; in other words, to establish that exception it inevitably requires two trials of the issues involved when tried upon its merits. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91. Since nothing could be accomplished by a discussion of the evidence adduced upon the allegations of fraud, we deem it unwise to go into that question upon this appeal. The case will of necessity be tried upon the merits of that plea, and what we would say here might be hurtful to one or the other of the parties upon that trial; hence, it would be best not said.

The judgment of the trial court does not indicate which of the exceptions mentioned was sustained, but either of the two discussed could well have been sustained by the court, and find support in the law. The judgment of the trial court is therefore affirmed.