**K. M. WALD et al., Appellants,**

v.

**WEST MacGREGOR PROTECTIVE ASSOCIATION et al., Appellees.**

No. 13486.

Court of Civil Appeals of Texas.
Houston.

Jan. 28, 1960.

Rehearing Denied Feb. 18, 1960.

Lewis, Ezell, Adams & Thrower, Dyche, Wheat & Thornton, E. H. Thornton, Jr., Thomas F. White and W. E. Dyche, Jr., Houston, for appellant.

McGregor, Sewell & Junell, Ben G. Sewell, Houston, for appellee.

WERLEIN, Justice.

This suit was brought by the West Mac-Gregor Protective Association and certain property owners, individually and as representatives of and in behalf of themselves and other property owners as a class, against appellants to enjoin them from using, occupying or maintaining certain property belonging to appellant Wald, including the house at 4324 Calhoun Road in the City of Houston, for any other than residential purposes, and in particular from using, operating or maintaining a fraternity house, rooming house or boarding house thereon. The case was tried before the court without a jury. Judgment was rendered for appellees permanently enjoining appellants from using, operating or maintaining the property in question as a fraternity house, rooming house or boarding house for such period or periods of time during which that certain agreement dated July 12, 1938, or any renewal or extension thereof, is in force and effect. No findings of fact or conclusions of law were requested or filed.

By their first three Points appellants complain that the court erred in failing to hold that West MacGregor Protective Association had no justiciable interest in the controversy and was neither a necessary or proper party, and erred in admitting evidence of the purpose, membership and functions of such Association and of its constitution and by-laws.

■ The purpose of the Association as recited in its constitution is "to serve the mutual interests of the members of the Association in protection of the values of their property, and to maintain and renew such restrictions as serve that purpose."

It is concerned with other adjoining or nearby restricted areas in addition to the "restricted area" in question. The Association owns no property in the "restricted area." The individual appellees in this case are members of the Association and do own property in such "restricted area." The great majority of its members, however, do not own property in the area involved in this suit, and hence would have no right as individuals or as members of the Association to join as plaintiffs herein. Russell Realty Co. v. Hall, Tex.Civ.App., 233 S.W. 996, writ dism.; Moody v. City of University Park, Tex.Civ.App., Dallas 1955, 278 S.W.2d 912.

■ We have concluded that the Association does not have any justiciable interest in this suit or any enforceable substantive right, and that it is not a necessary or proper party. It was improperly joined and should be eliminated as a party plaintiff. Alexander v. Alexander, Tex.Civ.App., 265 S.W. 1072, error dism.; Eppenauer v. Schrup, Tex.Civ.App., Ft. Worth 1938, 121 S.W.2d 473. We are of the opinion, however, that its joinder as a party plaintiff with the other plaintiffs who are property owners and members of the Association has not resulted in any harm to appellants. It is our view also that the admission of evidence as to the purpose and functions of the Association and the introduction of its charter and by-laws were not error which was calculated to cause and probably did cause the rendition of an improper judg-

ment. Rule 434, Texas Rules of Civil Procedure.

■ By Point 4 appellants complain that the court erred in holding that the use and occupancy of the Wald property by the fraternity house was a violation of the restrictions set forth in the restriction agreement of July 12, 1938.

The agreement in question was executed by the then owners of the lots in the "restricted area" including the owner of the lot now owned by appellant Wald. It includes, among other restrictive covenants, Article II upon which appellees' suit is based, reading:

> "It is understood and agreed that no business house, sanitarium, hospital, saloon, place of amusement, or entertainment, livery stable, factory, warehouse, duplex, apartment house, rooming house, boarding house or place of business of any kind shall be constructed, built, kept or maintained on any part of the property covered by this agreement, nor shall any house thereon be used for any such purposes, but shall be used for residence purposes only. The mention of rooming house or boarding house herein does not prohibit the renting out of one room, but is intended only to prevent the running of a regular rooming or boarding house."

Appellees pleaded that in violation of such restrictions appellants had entered into a lease of the easterly one-half, more or less, of the Wald property for the purpose of using the premises at 4324 Calhoun Road for a fraternity house, rooming house and boarding house, and such lease and the acts performed thereunder are in direct violation of said restrictions.

The evidence shows that the portion of the Wald property occupied by the fraternity was approximately the east 250 feet thereof, including the 8 room, 2-story house and garage thereon, the house facing Calhoun Road. The fraternity, a local chapter of a national Greek letter society, leased the property unfurnished from Wald in 1958. It has the exclusive control and use of the premises under the lease and pays rental of $320 per month. A painted sign on the house identifies it as the chapter home for the fraternity. On the average, 10 or 12 members live in the house. While meals are not served on the premises, food and beverages are available in the house through vending machines. Cokes, Cigarettes, sandwiches are sold on the premises for profit. The home is also used for fraternity meetings, initiations and entertainment. Girls are invited to dance to record player music. There are about three or four radios and two television sets in the house. The nearest neighbor, appellee Troulinas, has frequently been disturbed by the noise from the fraternity house, and on one occasion the police were called to stop the noise and disturbance.

We are of the opinion that the use of the premises in question for a fraternity house is in violation of the foregoing restrictions. We have not found, nor been cited to, any Texas case directly in point, but in certain other jurisdictions it has been held that the use of property for a fraternity is in violation of restrictions against using the property for other than residential purposes. Mu Chapter Building Fund v. Henry, 1949, 204 Ga. 846, 51 S.E.2d 841, 7 A.L.R.2d 431; Hannan v. Harper, 1926, 189 Wis. 588, 208 N.W. 255, 45 A.L.R. 1119; Seeley v. Phi Sigma Delta House Corp., 1928, 245 Mich. 252, 222 N.W. 180; City of Lincoln v. Logan-Jones, 1931, 120 Neb. 827, 235 N.W. 583.

In an annotation on this question in 7 A.L.R.2d 436, the annotator, after reviewing available authorities, concluded:

> "The very few cases decided regarding the subject of annotation, that is, whether the use of real estate by college fraternities or sororities constitutes the violation of restrictive covenants, have reached uniform affirmative results, whether by breach of covenant of quiet enjoyment, or by inability to comply

with provisions restricting use to one single private dwelling house, or for residence purposes only."

Appellants, by Points 5 and 6, assert that the court erred in failing to hold that the restriction agreement, if valid, applied only to the west 250 feet of the four individually owned tracts fronting on Calhoun and running back 700 feet in depth to Blythewood, and in failing to hold that the agreement was a plan or scheme to impose use and improvement restrictions on property in a neighborhood and was invalid because ambiguous and not clear.

We have read appellants' statement and argument very carefully but cannot agree with their contentions. The so-called four individual lots designated Bowman, Backlund, Graham and Gripon, extend from Blythewood to Calhoun, a distance of 700 feet, and front on both streets. At the time the agreement was entered into, residences facing east on Calhoun had been constructed upon each of said lots, but no residences had been constructed on the west portion of such lots facing Blythewood. Article VII of the restriction agreement sets out additional restrictions on the west 250 feet of said four lots fronting Blythewood, and provides, among other things, that the owners thereof agree to impose upon such west portion of their lots substantially the following restrictions: (a) Any residence constructed thereon shall face west and shall not be constructed nearer than 100 feet from Blythewood; (b) No garage, servant's house or any other such building may be erected upon the premises facing west on said street, unless same are attached to and made a part of the main residence, with the exception of the Gripon tract, and any detached garage shall be at least 200 feet from the street line; and (c) Only one residence may be erected upon the west 250 feet of each lot except the Gripon lot.

Then follow certain additional restrictions upon Lots 6 and 10 in Block 66 owned by the MacGregor Drive Development Company, and additional restrictions upon lots of

C. M. Malone and Wm. Malone facing Roseneath Drive. Without discussing at length the additional restrictions, we think it suffices to say that the parties nowhere undertake to modify or change the restrictions in the earlier paragraphs of the restriction agreement. The restrictions set out in Article VII are clearly additional restrictions and they are so labeled in the agreement.

Appellants, in undertaking to establish that the parties to the restriction agreement intended that it should apply only to the west 250 feet of the lots facing Calhoun, have resorted to supposition and conjecture rather than to the plain language of the instrument. We think the parties meant exactly what they said in the agreement. If they had intended the restrictions contained in the articles preceding Article VII to apply only to the west 250 feet of the four tracts extending from Blythewood to Calhoun, as asserted by appellants, they could readily have so provided. The difference in the size and locations of the lots was very likely the reason for imposing the additional restrictions upon the west 250 feet of the tracts extending from Calhoun to Blythewood, and also upon the lots owned by the Malones and two of the lots owned by the Development Company. There is nothing, however, to indicate that the parties intended by Paragraph VII of the agreement to eliminate the preceding paragraphs of such agreement or to place any limitations thereon. We are of the opinion that the agreement is clear and unambiguous. Moreover, there is no pleading by appellants alleging any ambiguity therein.

By their 7th Point appellants assert that the court erred in failing to hold that the restriction agreement was invalid because the restrictions were not uniform, universal, mutual and reciprocal as to all the property covered thereby.

It is true that one of the three lots of the Development Company facing on Blythewood was excluded from the use restrictions and from all but one improve-

ment restriction, and that certain additional restrictions were to be imposed upon the other two lots only when a plat of the addition in which they were located should be filed for record. Plaintiffs' Exhibit No. 1 shows that such plat was filed for record about two months after the Restriction Agreement was executed. Also, the additional restriction providing for the construction of only one residence on the west 250 feet of the lots facing Calhoun does not apply to the Gripon lot.

■ In this case we are concerned with restrictions imposed upon the lots in the restricted area by the mutual agreement of the owners of such lots, and not restrictive covenants created by deed or under a general plan adopted by an owner to sell lots. The rule of construction in cases of ambiguity which favors grantees would, therefore, not apply. While restrictions on the use of land are generally not favored, they will be upheld where the intention of the parties in their creation is clear and they are reasonable and not against public policy. 26 C.J.S. Deeds § 162(3), p. 1088. It has also been said that restrictions placed upon lots for the purpose of prescribing and preserving the residential character thereof are looked upon with favor by the courts. 12 Tex.Jur., § 94, p. 145.

■ "The first rule in construing a written instrument always is to seek to arrive at the intention of the parties to the end that their purpose may be effectuated." Couch v. Southern Methodist University, Tex.Com.App., 10 S.W.2d 973. We think the trial court, in granting the injunction, placed a construction upon the agreement in keeping with the intention of the parties construed in the light of the surrounding circumstances and as expressed in the agreement as a whole. Such intention is controlling. Walker v. Dorris, Tex.Civ.App. Ft. Worth 1947, 206 S.W.2d 620. See Johnson v. Wellborn, Tex.Civ.App., 181 S.W.2d 839, 841, ref., w. m., in which the court stated: "The restriction must be enforced as written and can not be stretched, en-

larged, extended or changed by construction." See also 3 Tex.Jur., Ten Year Supplement, § 93(a), p. 606.

■ The fact that identical restrictions are not imposed upon each lot regardless of its size and location does not stamp the agreement as not being mutual or reciprocal. The signatories to the agreement no doubt had good reasons for imposing in Article VII slightly different "additional restrictions" on certain lots. The use restrictions, however, embraced in Article II, apply to all of the property belonging to all of the parties to the agreement as described therein, with the exception of Lot 5, Block 66, belonging to the Development Company, which appears to be omitted. In 3 Tex.Jur., 10 Year Supplement, § 100(a) p. 610, it is stated:

> "Owners of property may by mutual covenant, apart from a conveyance, create enforceable restrictions as to the use of their property. It is not essential to the validity of such an agreement that there be a general scheme of restricting all of the lots in the addition in which the restricted lots are located. On the contrary, valid restrictions may result from a scheme to restrict the lots in only one block, or those facing on only one street."

See Cannon v. Ferguson, Tex.Civ.App., 190 S.W.2d 831; 26 C.J.S. Deeds § 162(3), p. 1093.

In Taylor v. McLennan County Crippled Children's Ass'n, Tex.Civ.App., 206 S.W.2d 632, ref., n. r. e., relied upon by appellants, the court was considering covenants created by a dedicatory instrument and not by mutual agreement. Nevertheless, the court held that such restrictions were valid although they provided that no residence should be erected on certain of the lots at a cost of less than the amounts designated for such lots, and exempted the lots in Block 5 from the restriction prohibiting erection of buildings for other than residence purposes. Although the court held

invalid certain restrictions imposed by a subsequent owner of a majority of the lots upon a number of the lots previously exempted, it did in effect approve the foregoing rule that it is not essential to the validity of a mutual restriction agreement that there be a general scheme of restricting all of the lots in the addition in which the restricted lots are located.

In Clements v. Taylor, Tex.Civ.App. Eastland, 184 S.W.2d 485, the court held a mutual restrictive covenant valid although not "effectively signed," since the intention of all to join therein was clear. We find nothing in that case, or in the other cases cited by appellants, which in any way militates against our holding in this suit.

By Points 8 and 9, appellants assert that the restrictions in Article II of the agreement have been abandoned and waived, and that appellees are estopped to enforce them because of repeated violations by some of them and other persons.

Appellants' contention is based upon evidence: (1) that appellee Troulinas permitted his yard man to occupy a bedroom with kitchenette and shower above his garage in consideration for yard work; (2) that a Mr. Baum permitted his wife's sister and her husband to occupy the premises over their garage for several years, for which they were required to pay rent; and (3) that a 60 foot street had been opened through one of the restricted lots.

Since the restriction agreement permits the renting of one room to a tenant and does not prohibit servants' quarters or the occupation of them by servants, it seems questionable whether Mr. Troulinas' use by his yard man constituted a violation. Mr. Troulinas himself did not consider that he had violated any of the restrictions. He was vitally interested in maintaining the restrictions and had in fact consented, with other property owners, to a ten year extension thereof. If there was any violation at all, it was a trivial one of which the other owners probably had no notice or knowledge prior to the trial of the present case.

It was shown that the Protective Association in an effort to enforce the restrictions, had cautioned Mr. Baum against any possible violation and that he had given his assurance that he was not making use of the property in violation of the restrictions. Mr. Baum testified that if he was responsible for any violation it was unintentional; that he had given his assurance that he would not violate the restrictions and that he was as much interested as anybody in maintaining the same.

We do not think the construction of the street through a portion of one of the lots could be considered as a waiver or abandonment of the over-all restrictions, since the restriction agreement does not preclude the use of the property for a street, and in any event the City could have exercised its right of eminent domain and forced such use upon the property owners without their consent or acquiescence.

We have concluded that the aforesaid alleged acts in violation of restrictions do not support the defense of waiver or estoppel under well established rules of law. As stated in 14 Amer.Jur., p. 644, §§ 295, 296,

"There can be no waiver in the absence of knowledge of the fact upon which the claim of waiver is based. * * * Non objection to trivial breaches of the covenant does not result in loss of the right to enforce the covenant by injunction. Generally, acquiescence in violations of a restrictive covenant which are immaterial and do not affect or injure one will not preclude him from restraining violations thereof which would so operate as to cause him to be damaged."

See also Eakens v. Garrison, Tex.Civ.App., 278 S.W.2d 510, 514, ref., n. r. e., in which the court quoted the following statement from Ragan v. Mosher, Tex.Civ.App., 225 S.W.2d 438, 441:

"' * * * in order to establish a waiver or abandonment of a general scheme or plan for the development of a particular area, it must be shown that such plan has been violated to such an extent as to reasonably lead to the conclusion that it had in fact been abandoned, and that unsubstantial violation thereof or the fact that a complainant has not objected to previous violation of such restrictions, particularly where they did not immediately affect the enjoyment of his own premises, will not prevent him from maintaining an action for injunctive relief to prevent substantial violations thereof, or a violation which would materially affect his own premises.' "

█ In the absence of findings of fact, this Court will presume that the trial court found every disputed fact in such a way as to support the judgment rendered, and that there was either no evidence of probative force of any violation or that any finding of waiver or estoppel would be against the great weight and preponderance of the evidence. Construction & General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958.

█ We find no merit in appellants' 10th Point asserting that the trial court erred in failing to hold that the general conditions in the approximate vicinity of the four lots facing on Calhoun had so changed that the continuation of the restrictions would place an undue burden and hardship upon the east 450 feet of such lots. We think the case of Cowling v. Colligan, Tex.Sup., 1958, 312 S.W.2d 943, 946, is decisive of appellants' contentions:

"A court may not refuse to enforce a residential-only restriction against a particular lot on the sole ground that a change of conditions has rendered the lot unsuitable for residential purposes and it would therefore be inequitable to enforce it. The equities favoring the particular owner is only one facet of the judicial inquiry. Those equities must be weighed against the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the residential character of the area."

There can be no doubt that traffic has increased on Calhoun. Nevertheless, the restrictions are not only for the protection of such lots, but for the interior lots where there is little traffic. The evidence shows that fine residences, having a market value of from $30,000 to $100,000, have been constructed in the restricted area and that such values would probably be seriously impaired should any exception be made to the residential use restrictions.

The judgment of the Trial Court is reformed to eliminate the Association as a party plaintiff and, as reformed, is affirmed.