Rev. and Mrs. John BARCLAY et al.,
Appellants,

v.

TARRY HOUSE, INC., Appellee.

No. 11662.

Court of Civil Appeals of Texas.

Austin.

Nov. 27, 1968.

Rehearing Denied Dec. 18, 1968.

Clark, Thomas, Harris, Denius & Winters, Barr McClellan, Small, Herring, Craig, Werkenthin & Shannon, Charles F. Herring, Fagan Dickson, W. Page Keeton, Austin, for appellants.

John W. Stayton, Austin, for appellee.

PHILLIPS, Chief Justice.

Appellants here, the plaintiffs below, sought the trial court to enjoin any further construction and use of the present facilities located on a five acre tract in their residential neighborhood from being used for a proposed private, family-type club. The trial court refused the injunction, hence this appeal.

We affirm.

The trial court did not file any findings of fact or conclusions of law. Texas Rules of Civil Procedure, rule 385(e).

Appellants are before this Court on four points of error, however due to our disposition of the first point we need not notice the remaining three.[1]

Appellants' point of error number one is that of the trial court in refusing to enter the injunction because the uncontradicted facts show that appellants, and each of them, are entitled to the protection of the Brentwood Place restrictions.

We overrule this point.

As stated in the brochure of the proposed club, "Tarry House is a small residential club located at 3006 Bowman Road near Lake Austin. The club is organized for the purpose of providing dignified, quietly elegant yet casual surroundings where members having common interests and their families may enjoy dining, tennis, swimming and small private parties at a convenient and accessible location."

Appellee derives title to 4.53 acres of its property through a deed executed by The Episcopal Theological Seminary of the Southwest dated April 27, 1966. The property is described as "being all of Lot No. Seven (7) and a part of Lots Nos. Three (3), Four (4), and Five (5), all in Block D in Monte Vista, a subdivision. * * * according to the map or plat of said subdivision of record in Book 3, page 121 of the Travis County Plat Records." No deeds in appellee's chain of title contain any deed restrictions or make any reference to Brentwood Place.

The remainder of the property owned by appellee was obtained through deed from Lewis N. Little, dated January 20, 1966, and describes the property conveyed as "Lot Four (4), Brentwood Place Section 2. * * * according to the map or plat of said addition of record in Book 6, page 182 of the Travis County Plat Records." No deeds in appellee's chain of title contain any deed restrictions or refer to Brentwood Place.

1. "Point of Error No. II: The trial court erred because the undisputed facts establish that the church use of the four-and-one-half acre tract is not an abandonment or waiver of the single-family residential restrictions.
Point of Error No. III: The trial court erred because the undisputed facts show that one-acre of appellee's proposed 'club' site was restricted to single-family residential uses and any annoyance to the neighborhood was prohibited; therefore, appellee does not have the minimum five-acre site for its proposed 'private club' uses, as required by the Zoning Ordinance of the City of Austin.
Point of Error No. IV: The trial court erred because there is no evidence to show any hardship to appellee from a halt in construction, either on July 18, 1968, when construction activity was to stop pursuant to appellants' administrative remedies; or on August 21, 1968, the date of the hearing; and, accordingly, appellants are entitled to the present enjoyment of the neighborhood restrictions as opposed to appellee's proposed future uses for its club purposes."

The original subdivider, Monte Vista Real Estate Company, conveyed the greater portion of property herein involved (4.53 acres) to D. C. Reed, appellee's predecessor in title through a nonrestrictive deed dated July 8, 1933. Out of the numerous deeds executed by Monte Vista, appellants introduced seven conveyances in evidence that contained restrictions. Of these conveyances only one was executed prior to the conveyance from the original subdivider to D. C. Reed. The plat of Monte Vista Subdivision reflects no restrictions.

The remainder of the appellee's acreage involved here consists of Lot 4, Brentwood Place, Section 2. The deed to this property describes it as set out immediately above, then refers to the recorded plat of said subdivision. No mention is made of Brentwood Place in any deed in appellee's chain of title and our hereinafter described holding with respect to appellee's 4.53 acre tract is equally applicable here with respect to the facts and the law.

As stated above, appellee's larger tract was originally conveyed by Monte Vista to D. C. Reed in 1933. It included all of Lots 3 and 7, and parts of Lots 4, 5 and 6, Block "D." Thereafter, D. C. Reed conveyed this property to R. Burt Dyke and Ruth Reed Dyke in 1934.

The lots conveyed to the Dykes in Block "D" became their homestead, and was subsequently retained by Mrs. Ruth Reed Hall (formerly Ruth Reed Dyke) as her home.

Of all the lots conveyed by D. C. Reed to the Dykes, those located in Blocks "E" and "G" were never separated from their tract in Block "D" because a proposed street by the name of Navajo Drive for Monte Vista had never been opened to use by the public until the Brentwood Place dedication was made. At this time Navajo Drive was redesignated as "Greenlee Drive," and was, in part, relocated. The 4.3 acre tract later passed from the Dykes to the Episcopal Church where the house thereon was used as a conference center. The next transfer to title was to the present owners.

When Brentwood Place (which lies to the north of Greenlee Drive) was subdivided in March, 1941, with a plat filed for record (which plat contained the restrictions as to use now in question) certain land owners of the said Brentwood Place and others owning property abutting the former Navajo Drive, now Greenlee, signed and acknowledged the plat which contained the abovementioned restrictions. This included the Dykes or appellee's predecessors in title. The recorded plat of Brentwood Place shows the lots subdivided by continuous heavy black lines depicting the property by metes and bounds. These lines and their respective calls encompass the entire area intended to be subdivided. The Dyke land in question here lying to the south of Greenlee is sketched into the plat through the use of dotted lines, lacks calls as to angles and distance and has been sketched so that the lines do not close to the south. Vernon's Ann.Tex.Rev.Civ.Stat. art. 974a.

Article 974a requires that subdivision plats be filed for record and in this connection states that the subdivider

"shall cause a plat to be made thereof which shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part, giving the dimensions thereof of said subdivision or addition, and dimensions of all streets, alleys, squares, parks or other portions of same intended to be dedicated to public use, or for the use of purchasers or owners of lots fronting thereof or adjacent thereto."

It is obvious from the plat itself that the land in question was not intended to be included in Brentwood Place as there was no attempt made to comply with the statute as to this portion of the property.

Appellants contend, however, as best we understand their position, that all the signatories to the Brentwood Plat entered into a mutual covenant adopting the restrictions recited therein and impressing either the original Monte Vista Subdivision therewith or, even further extending the restrictions, by impressing all of their nearby land therewith. In this respect appellants urge upon us the decisions of the Court in Wald v. West MacGregor Protective Assoc., 332 S.W.2d 338 (Tex.Civ.App. Houston 1960, err. ref'd n. r. e.) and Clements v. Taylor, 184 S.W.2d 485 (Tex.Civ. App. Eastland 1944, no writ) as authority for the proposition that mutual restrictive covenants between adjoining landowners under certain conditions, are valid and legal to effect the purpose intended thereby. We have no quarrel with these cases, however they are not in point. There is ample evidence before us to support the implied finding of the trial court that the restrictions are not applicable to the property in question. True, one of the original signers of the Brentwood Place Plat testified that it was her understanding that a mutual covenant had been entered into in the manner described. This conclusion by a witness cannot vary the terms of a written instrument which stated that the purpose of the above described parties entering into the written agreement was to approve changes of the location of certain streets lying between Brentwood Place and the properties lying without Brentwood Place thus " *  * have caused the said property described to *be surveyed and platted  *  *  *"* (italics added). It is clear that the parties intended to include in Brentwood Place only the property that had been surveyed on the ground and the adjoining therein of the abutting property owners was merely to approve the locations and use of the new streets.

We affirm the judgment of the trial court denying the injunction.

Affirmed.

O'QUINN, J., not sitting.