HANNAN, Appellant, vs. HARPER and others, Respondents.

*March 11—April 6, 1926.*

*Landlord and tenant: Two-unit dwellings: Covenant that building will be used only for residence purposes: Evidence: Covenant not implied: Quiet enjoyment: Disturbance constituting constructive eviction: Leasing one unit to college fraternity: Equitable relief: Injunction.*

1. In the absence of an express provision in the lease of the lower half of a dwelling house that the upper portion was to be used for residence purposes only, the principle that all preliminary conversations and agreements leading up to the execution of the written contract are conclusively presumed to have been embodied in the writing is controlling as against a contention of an implied agreement as to the use of the upper portion for residential purposes. p. 594.

2. Nor will a covenant that the upper portion of the building will be used for residence purposes only, be implied from the fact that the building was constructed for residential purposes and had at all times prior to the execution of the lease been devoted to such purposes. p. 595.

3. There is an implied covenant for quiet enjoyment in every lease for a term of less than three years; and such a covenant is one relating to the possession of property, and is broken by an entry and expulsion from or actual disturbance of such possession. p. 595.

4. A constructive eviction constitutes a breach of a covenant for quiet enjoyment. p. 595.
5. The occupancy of the upper flat of the dwelling house as head-quarters and club rooms of a college fraternity amounts to a constructive eviction of the tenant of the lower flat and a breach of an implied covenant for quiet enjoyment, entitling the tenant to an injunction to restrain such breach. p. 598.

APPEAL from an order of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

Action for an injunction to restrain a constructive eviction from leased premises. The complaint alleges, in effect, that on and prior to the 24th day of April, 1923, the defendants *R. G. Harper* and *Hannah Harper,* his wife, were the owners of premises in the city of Milwaukee upon which was located a two-family duplex flat or apartment building, suitable for occupancy by not more than two families of not more than five or six persons in each family. A barn or garage was also located on said premises.

On or about the 24th day of April, 1923, the defendants *R. G. Harper* and wife leased the lower flat or apartment to this plaintiff for a term commencing June 1, 1923, and ending May 1, 1926, that the said building had never been used or occupied for any purpose other than that of a family residence prior to the said 24th day of April, 1923, and that it was understood between said lessors and said lessee that said premises would continue to be used during the term of said lessee's tenancy for family residence purposes only, but the lease contained no such covenant. In the month of June, 1923, plaintiff entered into possession of said premises with his family, and ever since has been in occupation thereof for family residential purposes.

In June, 1925, the defendants *R. G. Harper* and wife entered into a land contract for the sale of said premises to the defendant *Charles Cobeen;* that in entering into said contract said *Cobeen* was acting for himself and for and on behalf of the defendant *Delta Sig Housing Corporation of Milwaukee;* that said *Delta Sig Housing Corporation of*

*Milwaukee* is the corporate entity through which the Delta Sigma Pi Fraternity transacts its business, and was organized for the purpose, among others, of purchasing or leasing quarters to be occupied and used by said Delta Sigma Pi Fraternity for fraternity, living, rooming, and club purposes; that said Delta Sigma Pi Fraternity is a college club or fraternity composed of from thirty to forty men students attending Marquette University, and ranging in age from seventeen years upwards; that said Delta Sigma Pi Fraternity has moved its furniture into said upper apartment and said barn or garage; that from and after September 15, 1925, the premises so described will become a common meeting place, club house, rooming house, and runway for the members of said fraternity and other college students, and will be used continuously, day and night, by from thirty to forty men college students; that it is a matter of common knowledge and a well established fact that college students belonging to groups such as the defendants threaten to install, and have installed, on such premises, are, for the most part, exuberant and irresponsible young men, given to noisy, boisterous, hilarious, and destructive habits; that such students do not keep regular hours, engage in wrestling, scuffling, and "rough house" bouts in their rooms, are addicted to the use and abuse of vibrant and sonorous musical instruments, and render premises inhabited by them unsuitable for family residence purposes; that said lower and upper apartments have a common front porch about nine feet square, a common front entrance door, a common front vestibule, a common rear entrance door, a common rear vestibule or hall, and a common rear stairway, and that in entering and leaving said lower and upper apartments it is necessary for the occupants thereof to use jointly such common front porch, entrances, vestibules, halls, and stairway, and the approaches leading to same; that said lower apartment consists of five rooms and a bath room located

on the first floor and one room located on the third floor in the rear, a cellar or basement located on the north side of said dwelling house, a laundry located in the basement, which said laundry is for the joint use of, and is and has been used jointly by, the families occupying the lower and upper apartments, the common front porch, driveway, yards, front and back, surrounding said dwelling house, which said driveway, yards, and common front porch are for the use of, and are used jointly by, the families occupying said lower and upper apartments; that the only means of ingress and egress to and from the third-floor room of said lower apartment is by means of the common rear stairway hereinbefore described; that the only means of ingress and egress to and from the cellars or basements of said lower and upper apartments is by means of a common rear stairway and passageway through the common laundry hereinbefore described; that said common front porch, common entrances, common vestibules, hallways, stairways, passageways, driveway, and yards surrounding said dwelling house are necessary and proper appurtenances to the use and occupation, beneficial enjoyment, and peaceful possession of said premises by the plaintiff, who occupies said premises for family residential purposes.

There was also an allegation in the complaint that the defendants threatened to commence extensive building alterations on said premises for the purpose of accommodating said premises to the use and occupation of same for fraternity, rooming house, and club purposes; that in conducting such building operations the defendants will deposit on said premises large quantities of building material and apparatus, to excavate and dig up the lawns thereon, and to despoil said plaintiff's lawns, flower gardens, and shrubbery; that all of said threatened acts on the part of the defendants will interfere with and deprive said plaintiff of the use, occupation, and beneficial enjoyment of said prem-

ises, its yards and appurtenances, and will do and cause said plaintiff irreparable and irremediable injury and damage, and that plaintiff has no adequate remedy at law.

Plaintiff prayed for an injunction restraining the defendants from using any portion of the premises for fraternity, rooming house, or club purposes, or for any other purposes except private family residence purposes, and from installing on such premises, or any portion thereof, any college fraternity, or club, up to and including May 1, 1926; also restraining them from conducting building operations upon said premises, and from doing any act or acts which will interfere with the plaintiff's use, occupation, and enjoyment of said premises, its yards and appurtenances.

The complaint was served on the defendants on August 17, 1925. On the 24th day of August, 1925, plaintiff secured an order requiring the defendants to show cause before the Honorable JOHN J. GREGORY, Circuit Judge, on the 28th day of August, 1925, why a temporary restraining order and injunction should not be granted, which order to show cause restrained the defendants, until the hearing of said order to show cause, from using or occupying said premises for fraternity, rooming house, or club purposes, or for any other purposes except private family residence purposes, and from conducting any building operation upon said premises, or doing any other acts with respect to such premises which will, or are calculated to, interfere with said plaintiff's use, occupation, or beneficial enjoyment of said premises. The order to show cause was supported by an affidavit of the plaintiff in which the various allegations of the plaintiff's complaint were repeated and emphasized, and in which it was stated that on or about August 14, 1925, this affiant was informed by a person representing himself as a member of said Delta Sigma Pi Fraternity, and as representative of the above named defendant *Charles Cobeen,* that the use and occupation of said premises by said fraternity and the presence of large numbers of college

students would cause this affiant annoyance and inconvenience in his use and occupation of the lower apartment of said premises; that said *Charles Cobeen* and the said Delta Sigma Pi Fraternity and its members knew that this affiant occupied the lower apartment of said premises for family residence purposes, under lease, until May 1, 1926, and that the said *Charles Cobeen* and the said Delta Sigma Pi Fraternity, and its members, would like to get possession of said lower apartment by having this affiant give up his lease thereon, and the inconveniences and harassments resulting to the plaintiff from the use of said second-floor apartment for college fraternity headquarters are detailed with great particularity.

In opposition to the motion the defendant *R. G. Harper* denied that there was any understanding between him and the plaintiff at the time of making the lease, or at any other time, that the premises would be used during the term of plaintiff's said lease for family residence purposes only. There was also an affidavit by the defendant *Cobeen* in which he denied any actual, or contemplated, extensive building operations on the premises. There was no denial on the part of any one that it was the purpose and intention of the defendant *Cobeen* and the housing corporation to devote the said second-story apartment to the purposes of a college fraternity headquarters and club.

Upon the hearing the circuit judge denied the motion for a temporary injunction, and dissolved the restraining order contained in the order to show cause of August 24, 1925. It was later ordered by the court, however, that the restraining order be continued in force pending appeal, upon terms fixed by the court. From the order denying the temporary injunction, and vacating the restraining order of August 24th, the plaintiff brings this appeal.

For the appellant there was a brief by *Timothy J. Hannan* and *Hannan, Johnson & Goldschmidt* of Milwaukee, and oral argument by *Timothy J. Hannan* and *Wm. F. Hannan.*

For the respondents there was a brief by *F. C. McCarthy* and *Gerald C. Maloney,* both of Milwaukee, attorneys for *Cobeen* and another, and *O. W. Bow* of Milwaukee, attorney for *Harper* and another; and the cause was argued orally by *Mr. McCarthy.*

Owen, J.    The appellant contends that there was at least an implied agreement between him and *Harper,* at the time of the execution of the lease, that the upper flat was to be used for residence purposes only during the term covered by the lease.    There is no express provision to that effect in the lease, and the principle that all preliminary conversations and agreements leading up to the execution of a written contract are conclusively presumed to have been embodied in the written contract obtains.    But the further contention is made that such a covenant is to be implied from the fact that the building was constructed for residential purposes and had been devoted to such purposes at all times prior to the execution of the lease, and that the parties were presumed to have that situation in mind at the time of the execution of the lease, and that a covenant limiting the use of the remaining portion of the premises to residential purposes only is to be imported into the lease by implication.    Reliance is placed upon *Gedge v. Bartlett* (Eng. Ch.) 17 T. L. R. 43; *Alexander v. Mansions Proprietory* (Eng. Ch.) 16 T. L. R. 431; and *Hudson v. Cripps,* [1896] 1 Ch. Rep. 265.    From an examination of those cases it appears that the court found an express provision in the lease in each instance which prohibited the landlord from devoting the remainder of the premises to the use from which he was enjoined.    For example, in *Hudson v. Cripps, supra,* the defendant leased to the plaintiff one of the flats contained in a large apartment building.    The lease provided, among other things, that the lessee should not use the premises, or any part thereof, otherwise than for the

purpose of dwelling rooms. It appeared that this provision was in the lease for every flat of the entire building. The court held that this constituted a plan or scheme for the management and operation of the building which inured to the benefit of every tenant of the building. None of the cases cited is authority for the proposition that existing conditions for the uses to which premises have been put can be invoked to supply an implied covenant such as is here contended for. Our attention has been called to no case supporting such a doctrine. Plaintiff is not entitled to any relief upon the theory that the lease by its terms, express or implied, prohibits the landlord from using the remainder of the premises for a purpose other than that of a family residence.

However, it seems to be well settled in this state that there is an implied covenant for quiet enjoyment in every lease for a term of less than three years. *Eldred v. Leahy,* 31 Wis. 546; *Koeber v. Somers,* 108 Wis. 497, 84 N. W. 991; *Goldman v. Dieves,* 159 Wis. 47, 149 N. W. 713. This lease was for a term less than three years. It therefore contained an implied covenant for quiet enjoyment. This is a covenant relating to the possession of the property, and it is broken by an entry and expulsion from or actual disturbance of such possession. There is some conflict in the authorities as to whether the covenant of quiet enjoyment is breached by a constructive eviction. It is stated, however, in 15 Corp. Jur. 1280, 1281, that the weight of authority as well as the better reason is that any actual disturbance of the possession equivalent to an eviction, by one having a lawful and paramount title at the time of its execution, is a breach of the covenant. The case of *Durbin v. Shenners,* 133 Wis. 134, 113 N. W. 421, is cited as supporting that proposition. While it is stated in that case that a breach of the covenant for quiet enjoyment results only from an eviction, actual or constructive, from the whole or part of the

premises, it is not held that a constructive eviction does constitute a breach of the covenant for quiet enjoyment. However, we think that such is the logical if not the inevitable conclusion from the following cases: *Eldred v. Leahy,* 31 Wis. 546; *Silber v. Larkin,* 94 Wis. 9, 12, 68 N. W. 406; *Wade v. Herndl,* 127 Wis. 544, 107 N. W. 4. Thus in *Silber v. Larkin, supra,* p. 12, it is said:

"An actual expulsion from leased premises is not necessary to constitute an eviction. Any act on the part of the landlord which so interferes with the tenant's possession of the leased premises as to unfit them for the purposes for which they were leased, and render them uninhabitable for such purposes, and compel the abandonment thereof, constitutes an eviction. . . . Such an eviction furnishes ground for an action for such damages as are the natural and proximate consequences thereof."

And in *Wade v. Herndl, supra,* it is declared:

"The law governing the rights and liabilities of landlord and tenant, in cases wherein the tenant asserts eviction from the premises, is that actual expulsion is not necessary, but that any act of the landlord or of any one who acts under authority or legal right given him by the landlord which so disturbs the tenant's enjoyment of the premises as to render them unfit for occupancy for the purposes for which they are leased, is an eviction, and, whenever it takes place, the tenant is released from the obligation under the lease to pay rent accruing thereafter."

In *Eldred v. Leahy, supra,* it is made plain that conduct which deprives a tenant of the full use of the premises for which they were leased constitutes a breach of the covenant for quiet enjoyment.

We therefore conclude that the landlord, the defendant *Harper,* was bound to the plaintiff by a covenant for quiet enjoyment, which the law imports into the written lease by implication, and the question is whether the occupancy of the upper flat as the headquarters and club rooms of a col-

lege fraternity amounts to a breach of that covenant.  If
the occupancy of the upper flat by the college fraternity as
a club and headquarters renders the lower flat unsuitable for
residential purposes, the result will amount to a plain breach
of the covenant for quiet enjoyment.   In denying the in-
junction the lower court said:

"In order to continue the temporary injunction, the court
would be obliged to hold that the members of the fraternity
mentioned and college students as a class are not law-abid-
ing citizens, but on the contrary are given to carousing, bois-
terous conduct, and generally to annoying citizens without
provocation or excuse.  The court cannot so hold."

This statement reveals an erroneous view of the law.   In
order for the presence of the fraternity in the upper flat
to render the lower flat unsuitable for residential purposes,
it is not necessary that the members of the college fraternity,
resorting to the second flat as their headquarters and club,
should be lawless citizens or given to carousing or boisterous
conduct.   The upper flat might be devoted to many lawful
purposes not amounting to a nuisance which would be clearly
inconsistent with the occupancy of the lower flat for resi-
dential purposes and render the lower flat entirely unfit and
unsuitable for such purposes.   The burden of showing that
the members of the fraternity are undesirable citizens, or
that they behave in a boisterous and unseemly manner, or
that the fraternity itself constitutes a nuisance, does not
rest upon the plaintiff.   He is entitled to relief if it appears
that the occupancy of the upper flat by this fraternity as its
headquarters and club renders the lower flat unfit or undesir-
able as a place of family residence.   Should such conclusion
be reached, it will constitute no reflection whatever upon the
fraternity or its membership.   It will do no more than to
merely indicate that the purposes, objects, and activities of
the fraternity are incompatible, and will interfere, with es-
tablished and well recognized incidents and attributes of

home life. Among those incidents safely may be mentioned privacy, quiet, and repose. That the privacy of the plaintiff and the members of his family will be seriously interfered with, cannot be doubted. There are from thirty to forty members in this fraternity. Their club and headquarters will be established in the upper flat. In order to reach the upper flat they will be in constant use of the common porch, the common vestibule, and the common hallway. That they will be using these avenues of ingress and egress to and from their headquarters during hours of the night, not unreasonably perhaps in relation to club and fraternity life, but at hours interfering with the sleep and repose of the members of the plaintiff's family, cannot be doubted. Neither can it be questioned that activities and indulgences, conforming in every respect to well established and proper conduct when confined to fraternity headquarters, give rise to noises and disturbances incompatible with family life in such close relation to such club headquarters. The presence of the club in the upper flat will work a complete change in the atmosphere and in the activities in and about the premises, and will render the lower flat much less fit, if not in fact impossible, as and for a place of family residence.

It seems unnecessary to pursue the subject further. The conclusion which we reach is but the intuitive judgment of every member of a household of ordinary sensibilities. Fraternity and club life is antagonistic to family life. Fraternities and clubs are organized and maintained because they are something different from the home, and for the purpose of providing a place for freedom of action not ordinarily indulged in the well regulated home. Conduct at times indulged and tolerated in the club and in the fraternity is annoying and disturbing to family life in such close proximity to the club as is plaintiff's flat to the proposed fraternity headquarters. We cannot doubt that the presence of the club in the upper flat will compel the plaintiff to abandon the lower flat as a place of residence. This will result in

a constructive eviction and a breach of the implied covenant for quiet enjoyment. Injunction is freely used by the courts to prevent the breaches of such covenants. 4 Pomeroy, Eq. Jur. (4th ed.) §§ 1707, 1709; *Shaft v. Carey,* 107 Wis. 273, 83 N. W. 288; *Lynch v. Union Institution,* 158 Mass. 394, 33 N. E. 603; *Hovnanian v. Bedessern,* 63 Ill. App. 353; *Bristol Hotel Co. v. Pegram,* 49 Misc. 535, 98 N. Y. Supp. 512; *Neiman v. Butler,* 19 N. Y. Supp. 403. We see no reason why the injunction should not be granted in the instant case. The lease has but a short time to run, and no great injury will result to the defendant by protecting the plaintiff in the rights to which he is entitled under the terms of the lease.

*By the Court.*—Order reversed, and cause remanded with instructions to grant the temporary injunction.