WAUSAU UNDERWRITERS INSURANCE COMPANY, a domestic corporation, Plaintiff-Appellant,

v.

DANE COUNTY, WISCONSIN, a Wisconsin municipal corporation, Paul A. Pieper and Jerome Grueneberg, Defendants-Respondents.

THOSE UNDERWRITERS AT LLOYD'S LONDON SIGNATORY TO POLICY #NH6192A, by Brian Malcolm Harding, representative underwriter, and companies collective signatory to policy #NH6192A, Oscar Mayer & Co. Inc., a foreign corporation and Oscar Mayer Foods Corporation, a foreign corporation, Plaintiffs-Appellants,

v.

DANE COUNTY, a Wisconsin municipal corporation, United States Aircraft Insurance Group, Compass Insurance Company, a foreign insurance corporation, Paul A. Pieper and Jerome Grueneberg, Defendants-Respondents.†

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

Court of Appeals

*Nos. 86–1044, 86–1091. Submitted on briefs October 16, 1987.—Decided November 25, 1987.*

(Also reported in 417 N.W.2d 914.)

317

For the plaintiffs-appellants the causes were submitted on the briefs of *Frank M. Coyne* and *Coyne & Niess Law Offices* of Madison, and *Kenneth T. McCormick, Jr.,* and *Boardman, Suhr, Curry & Field,* of Madison.

For the defendants-respondents the causes were submitted on the brief of *Ward I. Richter* and *Bell, Metzner & Gierhart, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Wausau Underwriters Insurance Company appeals from a judgment dismissing its complaint against Dane County and two of its employees, Paul Pieper and Jerome Grueneberg. Lloyd's London, Oscar Mayer & Co., Inc., and Oscar Mayer Foods Corporation (Oscar Mayer) appeal from that part of the judgment dismissing their complaint against Dane County, United States Aircraft Insurance Company, Pieper and Grueneberg. We consolidated the appeals.

The issues are: 1) whether the county agreed to indemnify Oscar Mayer against liability for damages caused by the county's employees; 2) whether the county breached implied covenants of quiet enjoyment to Badger Sheet Metal and Oscar Mayer; 3) whether the county constructively evicted Badger and Oscar Mayer; 4) whether the jury's answers on causation should be changed; 5) whether the statutory limits on tort damages, in sec. 893.80(3), Stats. 1981 apply; 6) whether the county's insurer waived the statutory limits in sec. 893.80(3); and 7) whether improper voir dire of the jury requires a new trial. We resolve all issues against appellants except those regarding sec. 893.80(3) which we do not reach. We therefore affirm.

On May 6, 1981, the county employees used an acetylene torch to cut off bolts protruding from a building owned by Dane County and leased to Oscar Mayer Foods Corporation. The cutting caused sparks which set the Oscar Mayer building afire. The fire spread to another building owned by the county and leased to Badger Sheet Metal. Both buildings were heavily damaged.

Wausau Underwriters had issued a fire policy to Badger. Wausau paid Badger for the fire loss and began this action against Dane County, its employees, and its liability carrier. Wausau claims that the employees were negligent and that the county breached its lease to Badger. The letter claim is based on the theory that because the warehouse was totally destroyed and the premises were unfit for the use for which they had been leased, the county breached its covenant of quiet enjoyment and evicted Badger.

Lloyd's London had issued a fire policy to Oscar Mayer covering its loss. Lloyd's paid the loss and brought this action against Dane County, its employees and the county's liability carrier. The action is based upon negligence, a claimed eviction and breaches by the county of an implied covenant of quiet enjoyment and of an agreement to assume liability for Oscar Mayer's damages.

The cases were tried jointly. The trial court partially granted defendants' motions for summary judgment. The court held that the statutory limits under sec. 893.80(3), Stats. 1981, applied[1] and dismissed the claims based upon breach of quiet enjoyment and upon breach of an express contract.

---

[1] In apparent reliance on this ruling, U.S. Aircraft, the county's liability insurer, settled with Badger for $50,000.

After both cases were submitted to the jury, the trial court directed the jury to find that the county employees were negligent in failing to have a person present to watch for and protect against fire, as a local ordinance requires, and left the jury to determine whether the employees were also negligent in other respects. The jury found that the employees' negligence was not a cause of the fire. The jury also found that the indemnity provision relied on by Oscar Mayer was not intended to be a part of its lease. The court entered judgments dismissing Wausau's complaint and partially dismissing the complaint of Lloyd's and Oscar Mayer. These appeals followed.

1. *Indemnity Provision*

The Oscar Mayer lease consists of a form lease and two addenda. A dispute exists as to whether it includes a third document, an Oscar Mayer purchase order. The purchase order is addressed to the county regional airport manager, described as "Seller," and provides in paragraph 6:

> "Seller agrees to indemnify ... Purchaser ... against any and all liability, loss, [or] damage ... arising out of or in connection with any act or omission, negligent or otherwise, of Seller ... in the furnishing of articles or material or in the performance of work or services hereunder; ... Seller assumes all liability for any injuries or damages occasioned by its agent or employees on Purchaser's premises, regardless of whether such agent or employee is at the time of such injury or damage, acting outside the scope of his employment."

At the trial evidence was introduced regarding the parties' intent as to the purchase order. The special verdict asked whether Oscar Mayer and Dane County intended the indemnity provision in the

purchase order to be a part of the lease. The jury answered "no." Lloyd's and Oscar Mayer contend that the court rather than the jury should have decided the issue.

The construction of an unambiguous contract is a question of law for the court. *Patti v. Western Machine Co.,* 72 Wis. 2d 348, 353, 241 N.W.2d 158, 161 (1976). Whether a contract is ambiguous is itself a question of law which an appellate court decides independently of the trial court's decision. *Moran v. Shern,* 60 Wis. 2d 39, 47, 208 N.W.2d 348, 351 (1973). A document is ambiguous if it is reasonably susceptible to more than one meaning. *Central Auto Co. v. Reichert,* 87 Wis. 2d 9, 19, 273 N.W.2d 360, 364–65 (Ct. App. 1978). If ambiguity exists, then the intent of the parties is a question of fact. *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463, 467 (1977).

Reasonable persons could disagree as to whether the lease documents include the purchase order. The lease and its addenda are complete on their face. Read together, they assign between the lessor and lessee various risks typical to leases, such as storm, fire and explosion. The purchase order, on the other hand, contains many provisions foreign to leases. These provisions refer to shipments, quantities, and warranties as to material and workmanship, patents, trademarks, etc. The purchase order purports to give Oscar Mayer the right to "terminate this order," on terms which are incompatible with the lease. The indemnity provision itself pertains to "the furnishing of articles or material or in the performance of work or services hereunder" rather than to leased property. The assumption of liability by the "Seller" refers to the "[p]urchaser's premises," which is not defined.

We conclude that reasonable persons could disagree as to whether the parties intended the purchase order to be a part of the lease. Because the parties' intent is a factual issue, the trial court properly submitted the question to the jury.

2. *Breach of Implied Covenants*

Appellants contend that the leases to Badger and Oscar Mayer are subject to implied covenants of quiet enjoyment, that the fire the county's employees caused constructively evicted Badger and Oscar Mayer, and that the covenant was therefore breached. It is conceded that the leases contained such implied covenants. A tenant may recover damages from the landlord for breach of an implied covenant of quiet enjoyment. *Wade v. Herndl,* 127 Wis. 544, 547 107 N.W. 4 (1906).

The trial court held that an essential element of a claim for such a breach is an intentional act by the landlord which has the effect of ousting the tenant from the use of the premises. Since no appellant contended that the county employees had intentionally set the fire, the court concluded that appellants' complaints failed to state claims for breach of the implied covenant. The court granted summary judgment dismissing the parts of each complaint pleading those claims.

Appellants contend that the county subsequently stipulated to facts which supplied the element which the trial court found lacking. The county stipulated that its employees intentionally applied a torch to the bolt and that sparks resulting from that application caused the fire. Appellants assert that this stipulation brings the case squarely within *Wade,* 127 Wis. at 547, 107 N.W. at 4, where the court said:

"The law governing the rights and liabilities of landlord and tenant in cases wherein the tenant asserts eviction from the premises, is that actual expulsion is not necessary, but that any act of the landlord or of any one who acts under authority or legal right given him by the landlord which so disturbs the tenant's enjoyment of the premises as to render them unfit for occupancy for the purpose for which they are leased, is an eviction, ..."

Notwithstanding the broad language the *Wade* court used, no Wisconsin case has held that an eviction results from a landlord's intentional act which, without more, renders the leased premises uninhabitable. The facts in *Wade* resulted in a narrower holding than the quotation from the opinion would indicate. The *Wade* court held that a landlord evicted its first tenant by leasing part of the premises to a second tenant who conducted a business which interfered with the first tenant's occupancy. The trial court had found that the activity causing the interference was a necessary part of the second tenant's business. Affirming a judgment for damages in favor of the first tenant, the *Wade* court said that the offending activity must have been "within the contemplation" of the landlord and the second tenant when the landlord entered the second lease. 127 Wis. at 548–49, 107 N.W. at 5.

A comparable situation arose in *Hannan v. Harper,* 189 Wis. 588, 208 N.W. 255 (1926). In *Hannan,* the plaintiff occupied a lower flat as a family residence. The defendant landlord later leased the upper flat to a fraternity. Exercising "the intuitive judgment of every member of a household of ordinary sensibilities," the *Hannan* court said it could not doubt "that the presence of the club in the upper flat will compel the

plaintiff to abandon the lower flat as a place of residence. This will result in a constructive eviction ...." 189 Wis. at 598–99, 208 N.W. at 259. The unspoken assumption of the *Hannan* court was that the offending activity was within the contemplation of the landlord and the fraternity when they entered the lease.[2]

This record is devoid of evidence that the county or its employees, contemplated, expected or intended that a fire would result from the bolt-cutting. Accordingly, we conclude on the basis of the *Wade* decision that although the work which caused the fire was intentional, because the fire itself was not within the contemplation of the county or its employees, the county did not breach its implied warranties of quiet enjoyment.

Appellants nevertheless urge us to presume that the county intended to evict Badger and Oscar Mayer. If, of course, the county intentionally made the leased premises unusable, it evicted Badger and Oscar Mayer. *See Silber v. Larkin,* 94 Wis. 9, 13, 68 N.W. 406, 407 (1896) (landlord evicted tenant by purposely rendering building uninhabitable and procuring its destruction under cover of condemnation proceedings).

Appellants premise their presumption argument on 3 *Thompson on Real Property,* sec. 1132 (1980). According to that authority, if a lessor's "wrongful

---

[2]*Compare Blackett v. Olanoff,* 358 N.E.2d 817, 819 (Mass. 1977) (landlord violated implied warranty to tenant by leasing nearby premises to noisy cocktail lounge even though landlord had not intended to violate tenant's rights, since breach "flowed as the natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done").

acts" permanently deprive the lessee of the beneficial enjoyment of the premises and the lessee abandons the premises, "it is an eviction, and the intent to evict is conclusively presumed." No Wisconsin case has adopted the rule stated by *Thompson.* We see no reason to add it to the case law of this state.

We reject the argument that the facts are such that "fairness" requires judgment in appellants' favor.[3] The precedents established by the Wisconsin Supreme Court bind the Court of Appeals. *State v. Cooper,* 117 Wis. 2d 30, 36, 344 N.W.2d 194, 197 (Ct. App. 1983). We conclude on the basis of those precedents that the appellants are not entitled to judgments for breach of the implied covenant.

3. *Change of Answers*

When an appellant proposes that we change a jury's answers on causation, we are to view the evidence in the light most favorable to the verdict and determine if the verdict is supported by any credible evidence. *Bennett v. Larsen Co.,* 118 Wis. 2d 681, 705, 348 N.W.2d 540, 554 (1984). The record contains credible evidence from which the jury could have inferred that the employees' failure to have a person on duty to watch for fires, make use of fire extinguishers and perform fire prevention protection duties was not a cause of the fire. A fire department captain testified that probably a person could not have seen a random spark making its way into the siding to the

---

[3]*Interair Services, Inc. v. Insurance Co.,* 375 So. 2d 317 (Fla. Dist. Ct. App. 1979), relied on by appellants for a "fairness doctrine," dealt with waiver of sovereign immunity and has no relevance to the facts before us.

place where the fire began. A fire department lieutenant testified that a watcher with an extinguisher could not have put out the fire since it was under the siding.

Wausau argues that the county employees were casually negligent because they also failed to comply with the code provision which required the employees to protect combustible material from possible spark, hot metal or oxide by noncombustible shields or covers. A fire department officer testified that the fire originated under exterior siding and was started by one of the employee's having cut a bolt no more than six inches from the point of origin. The employee who did the cutting testified that he shielded the siding by holding the noncombustible glove close and over the bolt as he cut downward.

The combustible siding was on a wall. A fire department captain testified that one way to protect the wall in compliance with the code would have been to cover the entire wall. Another way would have been to provide a much smaller shield close to the cut to prevent sparks from reaching the wall. The captain agreed that if a noncombustible glove were held over the cutting surface, the glove would "cast a shadow that would literally cover the wall," providing protection from sparks and hot metal. The captain agreed that the use of a glove in this manner "would certainly be partial protection. I can't say without seeing it that it would be complete protection though."

It is reasonable to infer that the jury accepted the "shadow" theory and found either that the employee who cut the bolt had complied with the code or that failure to comply did not cause the fire. Whether we would have made either finding on the same evidence

is not the question. Our role is solely to determine whether the verdict contains credible evidence on which the jury could base its finding. We conclude that this is the case and we therefore sustain the verdict.

4. *Sec. 893.80(3), Stats. 1981 Limit*

Appellants contend that the limitations in sec. 893.80(3), Stats. 1981 on the amount recoverable in tort against the county and its employees are inapplicable because the county's activities in which the tort occurred were proprietary. They also contend that the limits have been waived. Because of our prior conclusions regarding negligence and causation, we do not reach these contentions.

5. *Jury Voir Dire*

Appellants base their request for a new trial on the comments by counsel for the county's insurance carrier, United States Aircraft Insurance Group, during voir dire of the jurors. Appellants contend that information was planted in the minds of the jurors regarding the county's problems in obtaining insurance, and that the effect was to sow seeds of concern in their mind as to what would happen were they to find liability.

Counsel for United States Aircraft asked the jurors whether any had seen recent news media accounts which described the problems of counties in obtaining insurance and how one company cancelled Dane County's policy. He told the jury that his client was not the company which had cancelled Dane County's policy. He then asked whether any juror felt he or she would be prejudiced against United States Aircraft because of the actions of other companies. In the presence of the jury, counsel for Wausau objected and said the only reason for the question was to

prejudice the jury. Lloyd's attorney then said to Wausau's attorney, "That was a cheap shot," without identifying the offender. The objection was overruled, and no juror responded to the question.

Immediately following voir dire, appellants moved for and the trial court declined to declare a mistrial. The court noted it had instructed the jury before the voir dire that comments and statements of counsel were not evidence and that the only evidence the jurors were to consider would come from witnesses. The court believed the jury was not prejudiced and all jurors appeared to be thoughtful. None had responded that they felt biased. Finally, the court offered to ask the jurors whether any comment by counsel had caused them to be partial toward or prejudiced against any of the parties. All counsel declined the offer.

During its deliberations, the jury inquired of the court, "If we answer 'no' to questions '1' and/or '3' [the negligence questions], will it invalidate the entire trial? Can or will the judge change the verdict?" Appellants connect the note with the voir dire and infer that the jury wanted a judgment in favor of Dane County. On post-verdict motions, the trial court rejected that argument.

For us to order a new trial for improper remarks by counsel, it must "affirmatively appear" that the remarks prejudiced the complaining party. *Roeske v. Schmitt,* 266 Wis. 557, 572, 64 N.W.2d 394, 402 (1954). We must be convinced that the verdict reflects a result which in all probability would have been more favorable to appellants but for the improper conduct. *Klein v. State Farm Mut. Automobile Ins. Co.,* 19 Wis. 2d 507, 510 n. 1, 120 N.W.2d 885, 887 (1963). The test for

showing prejudice is most stringent when the trial court has found that the improper argument did not have a prejudicial effect and did not grant a new trial. *Id.* at 510–11, 120 N.W.2d at 887. We conclude that appellants have not met the test.

The trial court concluded immediately after the voir dire that counsel's remarks had not prejudiced the jury in favor of the county. Nor are we convinced that the remarks affected the result, notwithstanding the jury's inquiry to the court. That inquiry may have been prompted by a statement during final arguments. It is undisputed that during final argument counsel for Dane County's insured told the jury that the county employees should be found negligent only with respect to the "watcher" issue. The jury may nevertheless have discussed a contrary finding and was concerned that such a finding might "invalidate" the trial. When directed by the court to answer the negligence questions "yes," the jury did so. Because we are not convinced that the verdict probably would have been favorable to appellants but for counsel's remarks during voir dire, we will not order a new trial. *Klein,* 19 Wis. 2d at 510, 120 N.W.2d at 887.

*By the Court.*—Judgments affirmed.