INVESTMENT 9725, a Wisconsin
general partnership,
Plaintiff,

v.

BANKERS UNITED LIFE ASSURANCE CO., n/k/a Life Investors Insurance Company of America, an Iowa corporation, Defendant.

Bankers United Life Assurance Co., n/k/a Life Investors Insurance Company of America, an Iowa corporation, Counterplaintiff,

v.

Investment 9725, a Wisconsin general partnership, Counterdefendant.

No. 01–C–1110.

United States District Court,
E.D. Wisconsin.

Sept. 30, 2003.

Gregory I. Devorkin, Scott B. Fleming, Weiss Berzowski Brady & Donahue, Milwaukee, WI, for Plaintiff.

Laura E. Schuett, Cook & Franke, Milwaukee, WI, Michael W. Drumke, Steven M. Hartmann, Freeborn & Peters, Chicago, IL, for Defendant.

## ORDER

STADTMUELLER, District Judge.

The parties in this case disagree as to the proper interpretation of a clause in a mortgage note ("Note") which requires the plaintiff/counterdefendant Investment 9725 to pay a prepayment penalty. Defendant/counterplaintiff Life Investors Insurance Company of America, formerly known as Bankers United Life Assurance Company ["Life Investors"], determined that the penalty was $252,575, but the plaintiff argues that the penalty is only $140,168. Under protest, the plaintiff paid Life Investors, $252,575, the amount demanded by Life Investors, and filed this action to recover the alleged overpayment of $112,347. For the reasons stated below, the court finds that the defendant's interpretation of the Note is proper and grants the defendant's motion for summary judgment.

## BACKGROUND [1]

The plaintiff is a general partnership which has four general partners, all domi-

---

1. The background is largely taken from the parties' September 9, 2002 stipulation of facts ("Stip."). The court indicates where a party has disputed a proposed finding of fact.

ciled in Wisconsin. *See* Defendant's September 29, 2003 Amended Supplement to Notice of Removal, ¶ 2. The plaintiff is engaged in the business of owning and operating real property. During the time period relevant to this action, the defendant was an Iowa corporation engaged in the business of making mortgage loans, whose principal place of business was located in Cedar Rapids, Iowa. Because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, the court has jurisdiction over this action. *See* 28 U.S.C. § 1332.

In 1994, defendant loaned $3,700,000 to the plaintiff pursuant to the terms of the Note. (*See* Stip., Ex. A, hereinafter "Note".) The Note permitted the plaintiff to prepay the outstanding principal balance at any time after six years of the loan term but required the plaintiff to pay a prepayment premium as defined in the Note. (*See* Note, pp. 2–3.) The prepayment premium is the greater of one percent of the unpaid principal balance or the amount calculated pursuant to a formula set forth in the Note. The parties acknowledge that the prepayment premium is the amount established by the formula in the Note. The court sets forth the formula in its entirety:

> **Prepayment.** Prepayment of the principal sum due hereunder is not permitted during the first six (6) years of the Loan Term. Thereafter, prepayment of the remaining principal sum due hereunder is permitted, in whole or in part, subject to and strictly in accordance with the conditions hereinafter provided, at any time and from time to time. Any permitted prepayment, except for a prepayment in the last ninety (90) days of the Loan Term and except for prepayments as described in Sections 4.1, 4.2 and 4.3 of the Mortgage, shall be subject to a prepayment premium (the "Prepayment Premium"), to compensate Holder for reinvestment costs and for the loss of yield if prepayment is made at a time when reinvestment rates are lower than the yield on this Loan. The Prepayment Premium will be the greater of (a) one percent (1%) of the prepaid principal balance of the Loan or (b) the amount calculated as follows:

> 1. The "Reinvestment Yield" shall be equal to the yield on the U.S. Treasury Issue (the "primary issue," which shall be a U.S. Treasury Bond, Note or Bill, but in no event shall the U.S. Treasury Issue used to determine the Reinvestment Yield be a zero coupon bond) with a term as close as practicable to the remaining term of the Loan, as published two (2) weeks prior to the date of prepayment and converted to a monthly compounded nominal yield. In the event that there is no market activity involving the primary issue at the time of prepayment, the Holder shall have the right to choose a comparable U.S. Treasury bond, Note or Bill having an interest rate, remaining time to maturity and yield as close as practicable to the primary issue and the Reinvestment Yield will be equal to the yield of the secondary issue converted to a monthly compounded nominal yield. If the Reinvestment Yield is less than seven and seven-eights percent (7.875%) per annum, then the Prepayment Premium shall be calculated as set forth below; otherwise, the Prepayment Premium shall be one percent (1%) of the prepaid principal balance of the Loan.

> 2. The "Reinvestment Payment" shall be that amount equivalent to the amount that would be received if the prepaid principal balance of the *Loan* was invested at the Reinvestment Yield, expressed as a monthly payment amount. The Reinvestment Payment shall be calculated by multiplying the prepaid principal amount of the Loan by the Reinvestment Yield (expressed as a decimal frac-

tion) and dividing the result by twelve (12).

3. The "Monthly Interest Payment" shall equal the prepaid principal balance of the Loan multiplied by .07875 and dividing the result by twelve (12).

4. The "Payment Differential" shall equal the Monthly Interest Payment minus the Reinvestment Payment.

5. The "Prepayment Premium" shall equal the present value of the Payment Differential for each month of the Loan Term remaining until the Maturity Date, discounted at a rate equal to the Reinvestment Yield, compounded monthly

6. The Prepayment Premium shall be paid to Holder at the time the Loan or a portion thereof is prepaid.

(Note, pp. 2–3.) To highlight a few passages, the purpose of the prepayment premium is "to compensate Holder for reinvestment costs and for the loss of yield if prepayment is made at a time when reinvestment rates are lower than the yield on this Loan." Setting aside aspects of the definition which are not in dispute, the prepayment premium equals the "Monthly Interest Payment" minus the "Reinvestment Payment" for each month of the loan term remaining until the maturity date.

The defendant calculated the prepayment premium in the following manner: the defendant determined that the "Monthly Interest Payment" is $11,842.46 by multiplying the prepaid principal of the Loan ($1,804,564.68) by .07875 and dividing by twelve (*see* Note, p. 3 defining "Monthly Interest Payment"); the defendant determined that the "Reinvestment Payment" is $6,675.08 by multiplying the prepaid principal of the loan ($1,804,-564.68) by the "Reinvestment Yield," expressed as a decimal fraction (.044388), and dividing by twelve (see Note, pp. 2–3 defining "Reinvestment Payment"); the defendant then takes the difference between the Monthly Interest Payment ($11,842.46) and the Reinvestment Payment ($6,675.08), i.e. $5,167.38, and determines the present value of that amount for 54 months, the remaining length of the Loan Term, discounted at a rate equal to the Reinvestment Yield, compounded monthly which equals $252,514.86, the "Prepayment Premium." (*See* Note, p. 3, defining "Prepayment Premium.")

Here is where the plaintiff's calculations diverge from the defendant's calculations: the plaintiff argues that the Note is an installment note which provides for a declining principal balance as the loan matures; the plaintiff argues that the defendant's calculation of the "Monthly Interest Payment" does not account for the declining principal balance as the loan matures; specifically, the plaintiff contends that the "Monthly Interest Payment" is not a single calculation but fifty-four separate calculations which reflect the actual monthly interest payment of the Note; the plaintiff argues that the defendant's calculation of the prepayment premium, therefore, exceeds the yield lost as a result of the plaintiff's decision to prepay the balance of the loan (the plaintiff describes this as a "separate revenue stream"); the plaintiff argues that this was not a result intended by the parties because the stated purpose of the prepayment premium is "to compensate Holder for reinvestment costs and for the loss of yield if prepayment is made at a time when reinvestment rates are lower than the yield on this Loan;" the plaintiff also argues that its interpretation is supported by the language in the definition of the prepayment premium which requires a calculation of the Payment Differential "for each month of the Loan Term remaining."

The parties agree that the prepaid principal amount paid by the plaintiff was $1,804,564.68 (Stip.¶ 10); that the early

pay-off date was October 1, 2001, and 54 months were then remaining until the maturity of the loan (Stip.¶¶ 10–11); the Reinvestment Yield is 4.4388% (Stip.¶ 12); and the present value of $5,167.38 per month for the remaining 54 months of the term of the loan, discounted at the stipulated Reinvestment Yield of 4.4388%, compounded monthly, equals $252,514.86 (Stip.¶ 13).

The Note provides that the plaintiff shall pay "all costs of collection, including reasonable attorneys' fees and all fees and expenses incurred in endeavoring to protect, enforce and realize upon this Note, the Mortgage or the Security Documents." (Note, p. 5.)

The Note contains a choice of law provision which states that the "Note shall be governed by the laws of the State of Wisconsin." (Note, p. 6.)

## ANALYSIS

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (1986).

Under Wisconsin law, if a contract is unambiguous, the court determines the intent of the parties as a matter of law. *Wausau Underwriters Ins. Co. v. Dane County,* 142 Wis.2d 315, 417 N.W.2d 914, 916 (1987) (citations omitted). Whether the contract is ambiguous is a question of law, and if ambiguity exists, the intent of the parties is a question of fact. *Id.* "[T]he cornerstone of contract construction is to ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. Journal/Sentinel, Inc. v. Pleva,* 155 Wis.2d 704, 456 N.W.2d 359, 362 (1990). "[T]he purpose of judicial construction is to determine what the parties contracted to do as evidenced by the language they saw fit to use." *Id.*

The court finds that the defendant's calculation of the prepayment premium is consistent with the unambiguous terms of the Note. The prepayment premium is calculated, in part, by determining the "Monthly Interest Payment," a phrase that is defined in the Note as "the prepaid principal balance of the Loan multiplied by .07875 and dividing the result by twelve (12)." (*Note,* p. 3.) The plaintiff argues that this is not a single calculation and that the "prepaid principal balance" is not the $1,804,564.68 that it paid on October 1, 2001, but is rather fifty-four different principal balances for each month of the loan term. (*See* Plaintiff's Brief in Support of its Motion for Summary Judgment, pp. 13–14.) The definition of "Monthly Interest Payment," however, makes no mention of fifty-four different principal balances. Moreover, the plaintiff admitted that the "prepaid principal amount" of the loan was $1,804,564.68. (*See* Stip. ¶ 10.) The plain-

tiff wishes to convince this court that the prepayment premium is based upon the actual monthly payments that the plaintiff would have paid on the Note had it not elected to prepay the principal balance, but the plaintiff can neither reconcile that interpretation with the clear language that defines the phrase, "Monthly Interest Payment," nor convince this court that the definition should be ignored altogether. *See Pleva*, 456 N.W.2d at 362 (stating that an agreement should be given a reasonable meaning so that no part of the contract is surplusage) (citations omitted).

The plaintiff primarily relies upon two phrases in the Note to support its interpretation. First, the plaintiff argues that the Note's stated purpose is to compensate the defendant for the loss of yield and that the plaintiff's interpretation of the Note would compensate the defendants for its "actual" lost yield, rather than provide it with a "separate revenue stream." Determining "actual" lost yield and distinguishing that from a "separate revenue stream," however, is impossible, and the Note does not pretend to do that. As both parties acknowledge, the Note calculates a prepayment premium based upon many assumptions and estimations, including a hypothetical immediate reinvestment of the prepaid principal at the matching Treasury rate. (*See* Note, pp. 2–3, defining "Reinvestment Yield" and "Reinvestment Payment.") The Note also states that the prepayment premium will be the greater of one percent (1%) of the prepaid principal balance or the amount calculated by the formula. The parties agree that the formula applies in this case, but the possibility that the prepayment premium could have simply been one percent of the prepaid principal balance demonstrates that the prepayment premium is only an estimation of the defendant's loss. Under the terms of the Note, the purpose of compensating the defendant for its lost yield, therefore, does

not require determining what the plaintiff's actual monthly payments would have been for the duration of the loan term because the parties agreed to estimate the defendant's lost yield based upon a different method, and in any event, calculating the defendant's actual lost yield is impossible. Additionally, the plaintiff's interpretation ignores entirely the other stated purpose of the prepayment premium "to compensate [the defendant] for reinvestment costs." (Note, p. 2.) The plaintiff's calculations would purportedly compensate the defendant for its "actual" lost yield but would offer it no compensation for reinvestment costs.

Second, the plaintiff argues that the prepayment premium is based upon the actual monthly payment that the plaintiff would have paid on the Note for the duration of the loan term because the definition of prepayment premium requires a calculation of the Payment Differential "for each month of the Loan Term remaining" until the maturity date of the loan. The plaintiff argues that this language would be surplusage if the Monthly Interest Payment were only a single calculation. As the defendant points out, however, the lone case dealing with a prepayment premium cited by the plaintiff suggests a very plausible explanation for the language at issue: the language clarifies that the lender is entitled to a payment differential for "each month of the Loan Term remaining," rather than only for the single month of prepayment as the borrower argued in *Fishman v. LaSalle National Bank*, 247 F.3d 300 (1st Cir.2001).

The court has no doubt that the prepayment premium could have been written to account for the actual monthly payments that the plaintiff would have made under the Note. The prepayment premium, however, makes no mention of those actual payments and, instead, relies upon the

terms defined in the Note. The defendant's interpretation of the prepayment premium also relies upon those defined terms and is a reasonable interpretation of the unambiguous terms of the Note. The court has no authority to reform the contract. *See Kernz v. J.L. French Corp.*, 667 N.W.2d 751, 758 (Wis.Ct.App.2003) (quotation omitted) (stating that a court should not make contracts or reform them but should determine what the parties contracted to do). In *In re Financial Center Assoc's of East Meadow, L.P.*, 140 B.R. 829, 837 (Bkrtcy.E.D.N.Y.1992), the court rejected a borrower's claim that a another formula existed that might have better approximated actual damages from prepayment:

> Slight differences in formulating similar formulas will, over long periods of time and when applied to large sums of money, result in pre-payment charges of great disparity. There is no one right formula. All that exists is a long line of contingencies and factors that may be taken into account. There is, and there should be, a wide spectrum of available formulas that are designed to estimate, in any specific case, the possible actual damages. Actual damages in complicated and sophisticated transactions do not lose their character as difficult to ascertain just because formulas may serve as a useful tool to estimate them.

*Id.; see also In re Lappin Elec. Co., Inc.*, 245 B.R. 326, 330 (Bkrtcy.E.D.Wis.2000) (agreeing with the majority of courts that view a prepayment charge as liquidated damages). In this case, the formula in the Note is clear. Therefore, the court will deny the plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment with respect to the plaintiff's claim.

The defendant has filed a counterclaim to recover attorneys' fees and costs pursuant to the terms of the Note, (*see* Note, p. 5), and to request that the plaintiff be sanctioned pursuant to Federal Rule of Civil Procedure 11 for failing to voluntarily dismiss this suit. The court will decline to sanction the plaintiff for failing to voluntarily dismiss the suit. Even though the court disagrees with the plaintiff's interpretation of the Note, the court does not find that plaintiff's position was so lacking any arguable basis to warrant sanctions. *See* Fed.R.Civ.P. 11(b)(2), (c) (stating that an attorney, law firm, or party may be sanctioned for advancing claims, defenses, and other legal contentions that are not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law").

The court will grant the defendant's motion for attorneys' fees. The Note states the plaintiff "agrees to pay all costs of collection, including reasonable attorneys' fees" in "endeavoring to protect, enforce and realize upon this Note...." (Note, p. 6.) The plaintiff did not raise any defenses to the counterclaim for attorneys' fees aside from asserting its interpretation of the prepayment premium which the court has rejected. Therefore, the court will direct the defendant to submit an affidavit of attorneys' fees, costs, and expenses incurred during the course of this action within ten (10) days from the date of this order.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendant submit an affidavit of attorneys' fees, costs, and expenses reasonably incurred during the course of this action within ten (10) days from the date of this order in addition to demonstrating proper-

ly the citizenship of the parties; the plaintiff may file a response within ten (10) days from receipt of the affidavit; and the defendant may file a reply within five (5) days from receipt of the response if there be any.