BRENNAN, J.[1]
¶1 This appeal concerns the eviction of Keyhan Sheikholeslami, d/b/a Ogden Cleaners (Tenant) from a commercial property owned by RJR ML LLC (Landlord). The complaint alleged that the Tenant breached a commercial lease "by causing or permitting the release or spill of hazardous substances ... and by failing to timely remediate such releases." The hazardous substance at issue is perchloroethylene (PERC or PCE), a solvent commonly used in dry cleaning.
¶2 At trial, the Landlord's expert testified about a report he had prepared about the property. In June and July 2017, while the Tenant occupied the property, he had conducted inspections, taken samples, and photographed sludge material that, when tested, showed the presence of PERC. The trial court found that the PERC-contaminated sludge that the inspection revealed was "[e]ither new spills that were not cleaned up " or "some combination ... [o]f existing problems [from prior tenant] that weren't remedied as they should have been ... and current spills that were not immediately cleaned " as the lease required (emphasis added). Based on that finding, the trial court concluded that there was "a basis for the breach of the lease and for the eviction."
¶3 The Tenant does not argue that the trial court's findings of fact are clearly erroneous but argues that no breach occurred. First, he argues that under the lease, merely "detectable" levels found in sludge do not constitute a "spill or release" of a "hazardous substance" and that to constitute a breach of the lease, a spill or release "must have a component of damage, potential injury or liability." He argues that the trial court's determination that he breached the lease was based on its incorrect interpretation of the lease as meaning "that the Tenant breaches the lease by not removing residue even if the Tenant did not cause the purported spill or release[.]"
¶4 We conclude that the lease's plain, unambiguous language: (1) defines "hazardous substance" in a way that includes PERC; (2) prohibits the Tenant from "caus[ing] or permit[ting] any Hazardous Substance to be spilled or released," and the prohibition applies to any spill, not just high-volume spills; and (3) requires the Tenant to "promptly ... take all investigatory and/or remedial action reasonably recommended ... for the cleanup of any contamination ... that was caused or materially contributed to by" the Tenant. The lease permits the Tenant to use hazardous substances for dry cleaning, but the lease does not permit the Tenant to spill or release them. Applying this interpretation to the trial court's findings of fact-that the contaminated sludge observed by the inspection was the result of "new spills" by the Tenant or, in the alternative, the result of spills by both the Tenant and the prior tenant-we conclude that the Tenant breached the lease. We therefore affirm.
BACKGROUND
The lease.
¶5 After a prior dry cleaning business ceased operations at the property, the Tenant signed a lease effective December 4, 2015. The relevant provisions of the lease are as follows:
- The "Agreed Use" of the premises was as a dry cleaning business.
- The term "hazardous substance" was defined in part as follows: "any product, substance, or waste whose presence [or] use" is: (1) "potentially injurious"; (2) "regulated or monitored by any governmental authority"; or (3) "a basis for potential liability."
- The lease set forth limitations on the Tenant's activities with hazardous substances but stated that notwithstanding those limitations, and with certain caveats not applicable here, the Tenant "may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use[.]"
- Although Tenant was permitted to "use" hazardous substances as defined by the lease, a provision stated in relevant part that the Tenant "shall not cause or permit any Hazardous Substance to be spilled or released" on the premises and "shall promptly ... take all investigatory and/or remedial action reasonably recommended ... for the cleanup of any contamination of ... the Premises ... that was caused or materially contributed to by [the Tenant]."
The environmental consultant's report.
¶6 At the Landlord's request, environmental engineers inspected the property and prepared a report. The report stated the following:
- The engineers visited the property on June 30 and July 27, 2017.
- "A dark brown residue was observed on the floor and walls behind the active dry cleaning machine. The appearance of the material, and above-noted wipe sample results indicate it is spilled solvent waste (sludge) generated by the Firbimatic dry cleaning machine. This spilled sludge was observed during both the June 30, 2017, and July 27, 2017 inspections."
- "Inspection findings indicate use of PCE dry cleaning solvent and other chemicals, generation of solvent waste including dry cleaning machine sludge and separator water, and spillage of waste. [Volatile organic compounds] were detected in sludge, areas of apparent sludge spillage, in indoor air, and in wastewater."
- "PCE can potentially migrate through unsealed concrete floors or through cracks and joints in the floors. PCE can also potentially migrate through concrete sewer pipes or leak through broken pipes, contaminating the underlying soil and groundwater."
The trial court's findings of fact and conclusions of law.
¶7 An eviction hearing was held over three days in October 2017. The witnesses included the Tenant, the Landlord's asset manager, an employee of the Tenant, the Landlord's environmental consultant who prepared the report concerning the contaminated sludge, and an environmental consultant testifying for the Tenant who rebutted certain parts of the report but who acknowledged that he had never been to the property.
¶8 Robert Langdon, the environmental consultant who prepared the report for the Landlord testified:
We identified that the facility was generating hazardous waste, or a sludge, through the dry cleaning machine. It contained PCE. We found that the sludge was spilled on the floor behind the dry cleaning machine. It was splattered on the wall, and it was splattered on the back side of the dry cleaning machine. We had sampled the sludge, and it contained PCE.
¶9 The trial court, in making its findings of fact, noted that though the case involved a complex lease, "it also sort of comes down to some basic things." The trial court stated, "[A]t the end of the day, I believe that [the Tenant] was spilling the PERC and the sludge that contained the PERC[.]" The trial court credited the testimony of the Landlord's environmental consultant, "that he observed this sludge was there both in June and July," which was evidence that "it wasn't immediately cleaned up as the defendant indicated was the case." The trial court noted that "the issue ... is not the existence of [PCE] or PERC, because that's a given in the dry cleaning business, but how the substance is disposed of[.]" The trial court found as fact that "there were some spills and some sludge that Mr. Langdon found." The trial court stated that "old sludge from [the prior tenant]" would still have been the Tenant's responsibility and "it wasn't cleaned up and should have been under the lease, and the responsibility was accepted for that."
¶10 Ultimately, the trial court found that the PERC-contaminated sludge that had been observed on the property was "new spills that were not cleaned up contrary to what the defendant and the manager testified" or "[s]ome combination" of "existing problems ... and current spills that were not immediately cleaned[.]" The trial court therefore granted the judgment of eviction. This appeal follows.
DISCUSSION
I. Standard of review.
¶11 We set aside the trial court's findings of fact only if they are clearly erroneous. See WIS. STAT. § 805.17(2) ("[f]indings of fact shall not be set aside unless clearly erroneous"). A finding is clearly erroneous if "it is against the great weight and clear preponderance of the evidence." State v. Sykes , 2005 WI 48, ¶21 n.7, 279 Wis. 2d 742, 695 N.W.2d 277 (citation omitted).
¶12 "The interpretation of a contract is a question of law that we review independently with no deference to the conclusion of the trial court." Briggs & Stratton Power Prod. Grp., LLC v. Generac Power Sys., Inc. , 2011 WI App 36, ¶4, 332 Wis. 2d 160, 796 N.W.2d 234. "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." Maryland Arms Ltd. P'ship v. Connell , 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15 (citation omitted). "[U]nambiguous contract language controls contract interpretation." Kernz v. J.L. French Corp. , 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751. "We presume the parties' intent is evidenced by the words they choose, if those words are unambiguous." Id. "Whether a contract is ambiguous is itself a question of law" that we review de novo . Wausau Underwriters Ins. Co. v. Dane Cty. , 142 Wis. 2d 315, 322, 417 N.W.2d 914 (Ct. App. 1987).
II. The clear and unambiguous terms of the lease prohibit the Tenant from spilling or releasing a hazardous substance in any quantity and require immediate cleanup.
¶13 Section 6.2(c) of the lease provides as follows:
Lessee Remediation. Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Lessee's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Lessee, or any third party.
(Emphasis added.)
¶14 The Tenant notes that the lease does not define "spill" or "release." He argues that the correct interpretation of the contract is that the parties "intended an allowance for incidental, non-hazardous PERC residue consistent with standards in the dry cleaning industry." For support for this proposition, he points to the lease's definition of "hazardous substance"-any substance that is "potentially injurious to the public health, safety or welfare, the environment or the Premises," "regulated or monitored by any governmental authority," or "a basis for potential liability[.]" He argues that "this language indicates that any spill or release of a hazardous substance constituting a breach must have a component of damage, potential injury or liability." The mere definition of the term, however, creates no threshold for the application of the remediation clause, which explicitly prohibits the spill or release of "any Hazardous Substance" and requires "the cleanup of any contamination ... of the Premises" (emphasis added).
¶15 The Tenant further argues that the lease's use of "spill" must be interpreted consistently with municipal ordinances governing the Tenant's operation, and he argues that there is no evidence that the premises was noncompliant with the city municipal code. The Tenant argues that "sludge residue that is not hazardous or violative of any regulation is not a violation of the lease." Again, that is a standard that the lease could have employed but did not.
¶16 The Tenant argues that the PERC-contaminated sludge is insufficient, under the terms of the lease, to qualify as a "spill" or "release[.]" The unambiguous language, however, does not support his interpretation. Had the parties wished to specify an amount of acceptable spillage or allow spillage so long as it did not create a hazardous situation, they could have drafted the lease accordingly. We conclude that the lease terms as to the spill and release are unambiguous and apply to the spills documented at the property by the environmental consultant.
III. PERC is a hazardous substance under the definition in the lease.
¶17 The Tenant acknowledges that PERC is regulated by a government authority and would therefore satisfy the definition of "hazardous substance" under Section 6.2(a) of the lease. That section requires "express prior written consent of the Lessor" before the Tenant "engage[s] in any activity" that is a reportable use of a hazardous substance. However, the Tenant points to language within Section 6.2(a) that states that "[n]otwithstanding" that requirement, the tenant "may use" substances that are "ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use," which in this case is dry cleaning. The Tenant argues that the language permitting the tenant to "use" such substances without express prior written consent "modifies the term 'Hazardous Substance' to exclude PERC[.]" That is a misreading of the lease term. The language unambiguously states that the lessor has relinquished the requirement of express written advance permission for the use of specific hazardous substances that are being used as normally expected for the contractually agreed upon use of the property. It does not transform a hazardous substance into a non-hazardous substance. It would be absurd for the lease to exclude from the remediation clause the hazardous substance most likely to be spilled or released.
¶18 The fact that the lease contemplated that PERC would be "used and present on the premises" does not exclude PERC from prohibition on the spill and release of hazardous substances. There is no dispute that PERC is a government-regulated substance and satisfies the definition of "hazardous substance" provided in the lease. The provision that permits the use of PERC without prior written permission does not permit PERC to be spilled or released and does not exempt it from the immediate cleanup requirement.
IV. The Tenant caused the spill or release.
¶19 The Tenant argues that the lease holds him responsible only for spills or releases he caused. At the hearing, the Tenant testified that sludge residue was already present when he took over operations. He cites a provision at Section 6.2(f) that allocates to the Landlord the responsibility for any government-required remediation "with respect to the existence of Hazardous Substances on the Premises prior to the [Tenant] taking possession[.]"
¶20 We need not address the extent to which the lease holds the Tenant responsible for such hazardous substance cleanup when it is not "government-required" because even under the Tenant's reading of the lease, the trial court's findings are dispositive. At the conclusion of the hearing, the trial court found that the PERC-contaminated sludge that had been observed on the property was "new spills that were not cleaned up contrary to what the defendant and the manager testified" or "some combination" of "existing problems ... and current spills that were not immediately cleaned up" (emphasis added). In other words, there were either "new spills" while the Tenant occupied the premises, or there were both new spills while the Tenant occupied the premises and some existing problems. The trial court found, in other words, that the Tenant had spilled or released a hazardous substance in violation of the lease. The violation constituted a breach, and the eviction was correctly granted.
¶21 For these reasons, we affirm the trial court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.